Lynn Lorraine **STEIN**,
Plaintiff–Appellant,

v.

Marshall **STEIN**,
Defendant–Respondent.

No. 56430.

Missouri Court of Appeals,
Eastern District, Division Four.

March 20, 1990.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
April 20, 1990.

Application to Transfer Denied
June 19, 1990.

Paul H. Schramm, Schramm & Pines, St. Louis, for plaintiff-appellant.

Chester A. Love, Daniel P. Card II, Leigh Joy Carson, Love, Lacks & Paule, St. Louis, for defendant-respondent.

HAMILTON, Presiding Judge.

Appellant, Lynn Stein (hereinafter Wife), filed an action in equity against her former husband, Marshall Stein (hereinafter Husband). She sought to have the trial court divide and apportion previously unallocated property and to set aside the 1982 decree of dissolution of marriage, including the Property Settlement and Separation Agreement incorporated therein, on the grounds of fraud, misrepresentation, duress, and coercion. Although rejecting Wife's claim to set aside the decree on the latter grounds, the trial court did find that the dissolution decree failed to divide all the parties' marital and separate property. It therefore distributed that property. We affirm.

Husband and Wife married for the first time in 1955 and subsequently divorced in 1963. They married a second time on December 28, 1976.

On Friday evening, April 30, 1982, Wife told Husband she wanted a divorce. Husband agreed to it, although the parties differed as to whether Husband reacted to Wife's announcement calmly or became enraged. On Monday, May 3, 1982, Wife consulted an attorney, Paul Schramm (hereinafter Schramm), concerning dissolution of her second marriage to Husband. That evening she informed Husband that she had seen Schramm regarding a divorce.

Thereafter, Husband contacted the firm of Lewis & Rice concerning the divorce. He subsequently spoke by telephone with William McCalpin (hereinafter McCalpin), a partner at Lewis & Rice. During this conversation, Husband requested McCalpin to represent both him and Wife in the dissolution proceeding. McCalpin responded that he could not represent both so long as Schramm represented Wife. McCalpin had earlier represented Husband individually in business litigation against Husband's uncle.

Following his conversation with McCalpin, Husband spoke with Wife regarding her representation. By letter dated May 10, 1982, Wife informed Schramm that she had decided to drop divorce proceedings

and she requested a bill from Schramm, which Husband later paid.

On June 30, 1982, the parties met with McCalpin. At that meeting, McCalpin presented the draft of a Separation Agreement and the draft of a Joint Petition for Dissolution of Marriage. During this meeting, the parties worked out a Separation Agreement, resolving an initial disagreement concerning maintenance for Wife. The final Separation Agreement was delivered to Wife for her signature on July 1, 1982, and to Husband for his signature on July 2, 1982.

In the Separation Agreement, both parties waived their rights to maintenance.[1] They agreed to divide certain furnishings and personal property from their residences. Wife was to receive the parties' lake house, boats, and motors. Husband was to receive their St. Louis County residence and to assume responsibility for its mortgage. Husband agreed to pay Wife the sum of $50,000 as well as attorneys' fees and court costs for the dissolution.

On September 30, 1982, Husband and Wife each executed a property statement. These statements disclosed property that was neither divided nor set apart as separate property in the parties' Separation Agreement nor later, in the dissolution decree. Specifically, in his property statement, Husband listed pension and profit-sharing plans from Crown Foods, as well as Crown Foods stock, Union Electric stock, and "miscellaneous bonds." Wife listed a small pension and profit-sharing plan from Crown Foods, an automobile, and a condominium. McCalpin did not amend the Separation Agreement to reflect these items because he believed that the Separation Agreement reflected the agreement of the parties and that both parties knew the facts.

At the hearing on the dissolution, McCalpin asked Wife on four occasions whether she wanted separate representation. Each time she indicated satisfaction with McCalpin's services. Following this hearing, the dissolution court approved the Separation Agreement and, on November 10, 1982, dissolved the parties' second marriage.

The dissolution decree apportioned $150,000 in marital property to Husband and $187,000 in marital property to Wife. Each party also received certain furnishings and items of personal property that were not valued.

On March 17, 1986, Wife filed the instant action in equity against Husband, seeking, *inter alia,* to divide property not previously apportioned and to vacate and set aside the Decree and Separation Agreement by reason of fraud, misrepresentation, duress, and coercion.

Following a five-day trial, the trial court issued its findings of fact, conclusions of law, and judgment. It rejected Wife's claims of fraud, misrepresentation, duress, and coercion and declined to vacate either the dissolution decree or the Separation Agreement. Finding, however, that certain marital and separate property had not been allocated by the decree, the trial court divided it, distributing each asset to the party who had retained that asset on the date of the entry of the dissolution decree. Further facts will be referred to in the remainder of the opinion.

Wife appeals. She alleges the trial court erred (1) in rejecting her claim of fraud; (2) in rejecting her claim of mutual mistake of fact; (3) in valuing Husband's Crown Foods stock; (4) in rejecting her claim that Husband "sacrificed" some of the parties' marital earnings; (5) in valuing her condominium; (6) in valuing Husband's pension and profit-sharing plans; (7) in rejecting her claim that the distribution of marital assets was inequitable; (8) in rejecting her claims of bias on the part of the trial court; (9) in denying her request for attorneys' fees; and (10) in denying her request for costs.

■ This Court must sustain the judgment in a court-tried case unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it

---

1. The parties resolved the maintenance issue through a side agreement allowing Wife to re-

main on the payroll of Husband's company until the date of entry of the dissolution decree.

erroneously applies the law. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Moreover, a decision to reverse because the judgment is against the weight of the evidence is made with caution and with a firm belief that the judgment is wrong. *Id.* The trial court is free to accept or to reject all, part, or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). We, therefore, accept as true the evidence and inferences therefrom that are favorable to the trial court's decree and we disregard all contrary evidence. *Id.*

In her first point on appeal, Wife alleges the trial court erred in rejecting her claim that the Separation Agreement was procured by the fraudulent and collusive conduct of Husband and the parties' joint counsel, McCalpin. Contending that the trial court should have set aside the Separation Agreement and dissolution decree, Wife alleges that, as a result of the fraud perpetrated by Husband in concealing the limited nature of McCalpin's representation, Wife was denied access to the independent advice of her own counsel. The trial court, however, refused to set aside the Separation Agreement. It specifically found that Wife's testimony that the Separation Agreement was obtained by fraud and duress was not credible.

■ When seeking to set aside a final decree of dissolution, a litigant must prove extrinsic fraud.[2] *McCarty v. McCarty*, 300 S.W.2d 394, 400–01 (Mo.1957). When seeking, however, only to rescind portions of a property settlement in order to allocate marital property not previously considered, proof of fraud is unnecessary. *Karney v. Wohl*, 785 S.W.2d 630, 633–634 (Mo.App.E.D.1990).

■ In the case at bar, Wife denominated her initial pleading as "Petition to Divide Unapportioned Marital Property and Set Apart Separate Property and/or to Rescind Separation Agreement, Set Aside Decree of Dissolution and Reopen Dissolution Proceedings, and/or Damages." Her petition was filed in five counts, although at trial Wife dismissed Counts II and V without prejudice. Count I sought to divide and apportion previously unallocated property. Count III asserted a claim of fraud and misrepresentation. Count IV asserted claims that the Separation Agreement and the decree were the result of violence, intimidation, duress, coercion and undue influence perpetrated by Husband. Thus, to prevail on Count III, Wife was required to prove the elements of fraud that include (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the statement should be acted upon by the other party in the manner contemplated; (6) that party's ignorance of its falsity; (7) reliance on the truth; (8) the right to rely thereon; and (9) injury. *Curtis v. Kays*, 670 S.W.2d 887, 891 (Mo.App.1984).

■ A review of the record before us discloses that Wife failed to demonstrate fraud. While the essence of her evidence did suggest that Husband and McCalpin prevented her from learning what she needed to know about Husband's business affairs and about matters relating to the dissolution, Husband's evidence contradicted hers. Thus, the trial court was entitled to believe Husband's evidence that McCalpin cautioned Wife numerous times that she might consult with another attorney, that Wife was fully aware of Husband's property, and that the parties had reached an agreement as to property prior to consulting with McCalpin. The trial court explicitly evaluated the credibility of testimony presented by both Husband and Wife. We find no error in its finding that the testimony presented by Husband was "believable, credible and more worthy of belief" and, therefore, in its refusal to set aside the decree.

■ Wife next asserts the trial court erred in failing to find that a mutual mistake of fact accounted for the omission of marital property from the dissolution decree. She contends the trial court's failure to make a specific finding that the property

**2.** Extrinsic fraud relates not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. *Jones v. Jones*, 254 S.W.2d 260, 261 (Mo.App.1953).

was omitted by mistake meant the trial court failed to exercise its equitable "jurisdictional responsibility" to distribute the unapportioned property. This point is without merit.

■ A litigant is entitled to bring a separate action in equity to distribute marital property not considered by the trial court at dissolution. *Karney*, at 633–634. Equity will provide relief against a judgment obtained by extrinsic fraud, accident or mistake. *Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988).

■ The primary concern for this court is the correctness of the result in the trial court, not the route taken to reach it. *Walker v. Walker*, 631 S.W.2d 68, 71 (Mo. App.1982). Where no specific finding of fact was made upon an issue in a court-tried case, we deem that issue to have been found in accordance with the result reached. *Frensley v. Mills*, 746 S.W.2d 427, 428 (Mo.App.1988). Thus, we must presume that the trial court implicitly found the requisite factual basis for equitable jurisdiction before it apportioned the property unallocated by the dissolution decree. We note that Wife makes no argument that the trial court lacked equitable jurisdiction. Therefore, the failure to specify the basis for that jurisdiction is harmless. The point is denied.

■ In her third point on appeal, Wife contends the trial court erred in valuing 100 shares of Crown Foods stock, purchased by Husband during the marriage, at $13,217.

At the time of dissolution on November 10, 1982, Husband held 10,214 shares of Crown Foods stock. Of these shares, 10,114 were non-marital property because Husband acquired them prior to the marriage. Husband purchased the final 100 shares on May 30, 1981, during the marriage. The trial court valued the 10,214 shares at $1,350,000 with a value of $132.17 per share. The 100 shares of marital property were, therefore, valued at $13,217. Wife contends these 100 shares were erroneously undervalued because they gave Husband a controlling interest in Crown Foods and therefore were worth substantially more than $132.17 per share.

The trial court declined to attach a control premium to the marital shares.

■ As the parties correctly suggest in their briefs, the valuation of stock is a factual determination. The fair value of stock cannot be determined by a precise mathematical formula; rather, each case presents different elements of value that must be examined separately. *Dreiseszun v. FLM Industries, Inc.*, 577 S.W.2d 902, 907 (Mo.App.1979).

In the present case, the record shows that the issue of whether these 100 shares of stock should have had a control premium attached to them was the subject of conflicting expert testimony. Wife's expert, Dr. James P. Jennings, a professor of accounting at St. Louis University, testified that these 100 shares of stock had a greater value than did Husband's other shares because this specific block of stock enabled Husband to gain majority voting control of the corporation. Husband's expert, Mahlon Rubin (hereinafter Rubin), a certified public accountant, testified that a control feature meant far less in a closely-held corporation where securities were not traded than in a public environment where securities were publicly traded. In his opinion, the 100 shares in question were worth the same amount as any other 100 shares of Crown Foods.

The trial court was entitled to believe or disbelieve all, part or none of the testimony presented. *T.B.G.*, 772 S.W.2d at 654. The record thus amply supports the decision of the trial court. Moreover, each share of common stock can be viewed as evidence of unit ownership of the whole, each unit being of equal value such that their sum equals the value of the whole. *Dreiseszun*, 577 S.W.2d at 908. We therefore find no error in the trial court's valuation of the 100 shares of stock and its refusal to apply a control premium.

■ Wife next asserts error by the trial court in failing to find as a marital asset, or to impose as a lien against Husband's separate property, the value of a "sacrifice" in Husband's salary from Crown Foods in

1981 and 1982. She contends the reduction in Husband's salary in 1981 and 1982 is attributable to corporate redemption of treasury shares that enhanced the value of Husband's shares of Crown Foods. As a result, Wife claims entitlement to a portion of the increase in the value of those shares.

In 1981 and 1982, Husband was president and chief executive officer of Crown Foods, Inc. His salary from the corporation was $121,346 in 1980, $70,000 in 1981 and $70,000 in 1982. During 1981 and 1982, Crown Foods redeemed the shares of Husband's father for $297,034 and of Husband's uncle for $600,000. As a result, Husband then owned all of the issued and outstanding shares of Crown Foods stock. Crown Foods borrowed $300,000 from Centerre Bank in 1981 and $350,000 in 1982.

Wife relies upon the foregoing facts to argue that the Centerre loans financed the redemption of shares and that the pressure of these debts on Crown Foods caused the decline in Husband's earnings which were marital property. She further contends that this redemption/loan transaction inured to Husband's benefit because, as a result, he presently owns all the outstanding shares of stock in Crown Foods and, hence, controls the corporation.

Husband, however, presented evidence that the loans from Centerre Bank were necessitated by factors other than the stock redemption. For example, Rubin testified that the increase in accounts receivable and in inventory during those years were substantial factors that necessitated borrowing for working capital purposes. In addition, he noted, that the corporation acquired additional real estate following the redemption of stock in July, 1982, and he testified that Crown Foods had become less profitable in the early 1980s, even though its total gross sales had increased between 1978 and 1986. Rubin suggested Husband's salary decline may have been tied to the decrease in profitability, rather than to Crown Foods' debt to Centerre Bank.

The reasonableness of the compensation paid to an employee is a question of fact. *Ruetz v. Topping*, 453 S.W.2d 624, 628 (Mo.App.1970). Each case must be decided on its own facts and circumstances. *Id.* We cannot say, on the record before us, that the trial court erred in failing to find and acknowledge a "sacrifice" in marital earnings. Having made no specific finding of fact, we presume that any disputed fact issue was resolved in accordance with the result reached. *Frensley*, 746 S.W.2d at 428. Thus, the trial court implicitly found that Husband's compensation for 1981 and 1982 was reasonable and that he sacrificed no marital earnings. The record offers substantial support for this determination. Point denied.

In her fifth point, Wife asserts the trial court erred in valuing Wife's condominium and distributing it to her while simultaneously making an allegedly inconsistent finding that $18,135.75 in Husband's checking account at Centerre Bank was disposed of by the dissolution decree.

Pursuant to the terms of the parties' Separation Agreement, Husband was to pay Wife a cash settlement of $50,000 by paying Wife $30,000 prior to or upon execution of the Separation Agreement and $20,000 within sixty days after entry of the dissolution decree. Husband timely paid the first $30,000. Wife allegedly used this money for a deposit and down payment on a condominium. Husband also timely paid the balance of $20,000. The source of funds for the final payment of $20,000 was Husband's Centerre bank account.

The trial court found that the $18,137.78 in Husband's Centerre account had been disposed of in the Separation Agreement because it was paid to Wife as part of the $50,000 cash settlement. It also found that the equity in the condominium was $35,000 as of February 10, 1982. It then awarded the condominium to Wife.

Wife does not challenge the award of the condominium to her. Rather, she alleges error by the trial court in charging her with the equity value of the condominium because she asserts it was purchased with a part of the $50,000 cash settlement which

amount had already been considered in the Separation Agreement. Therefore, Wife contends she was double charged for the $35,000 value of the condominium.

Wife's point is not well taken. In this equity action, the trial court did no more than award her the condominium. Its purpose was to divide those assets which the Separation Agreement or dissolution decree had not divided. The condominium was mentioned neither in the Separation Agreement nor in the dissolution decree. Moreover, the record fails to disclose evidence of the purchase price of the condominium or evidence showing that the sole source of funds to purchase the condominium came from the initial $30,000 payment by Husband to Wife. Nor does the record disclose whether Wife invested the final $20,000 payment from Husband in the condominium. The trial court thus could have concluded from the record that Wife had an equity value in the condominium that had not been divided by the Separation Agreement or the dissolution decree. Therefore, we find no abuse of discretion by the trial court in finding an equity interest in the condominium not divided either by the Separation Agreement or by the dissolution decree.

■■■ In the sixth point, Wife asserts the trial court erred in its determination of the value of Husband's pension and profit-sharing plans which the dissolution decree failed to divide. In the instant equity action, the trial court found the plans each had a marital portion, but awarded the entirety of both plans to Husband. It further found that Husband's marital interest in the pension and profit-sharing plans had a value of between $40,000 and $45,000. Contending that this figure is unreasonably low, Wife also asserts she should have received a share of the plans by entry of a Qualified Domestic Relations Order (QDRO), 26 U.S.C.A. § 414(p) (West 1988 and Supp.1989).

■■■ A trial court is vested with considerable discretion in allocating marital property and an appellate court will interfere only if that allocation is so unduly weighted in favor of the party as to constitute an abuse of discretion. *Dardick v.*

*Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). Where other assets are available, a court is not required to divide pension benefits between spouses so long as the total property settlement is equitable. *Kuchta v. Kuchta*, 636 S.W.2d 663, 666 (Mo. banc 1982).

■■■ In the present action, the trial court accepted the testimony of Husband's expert, Rubin, in making its valuation. Rubin considered the tax liability Husband would have incurred in order to gain access to and use the funds in these two plans. He testified that the sum of money that went into Husband's pension and profit-sharing plans during his marriage with Wife was $100,203. Rubin further testified that, had Husband withdrawn the $100,203 on November 10, 1982, his tax liability would have been $57,116, leaving a net value of $43,087. A trial court is entitled to take cognizance of tax liability in determining the present value of a pension or profit-sharing plan. *Lewis v. Lewis*, 637 S.W.2d 207, 209 (Mo.App.1982).

Wife challenges this position by asserting that if the trial court had ordered a QDRO, the tax liability would have been saved, thereby increasing the value of the plans.

Whether the trial court, however, had jurisdiction to have ordered a QDRO presents a substantial legal question. Such orders first came into existence as a result of the Retirement Equity Act of 1984, Pub.L.No. 98–397, 98 Stat. 1426. Had the plans been divided in 1982 as part of the decree of dissolution, the dissolution court could not then have ordered a QDRO. Wife offers no authority that the trial court could apply the Retirement Equity Act of 1984 retroactively. Given this uncertainty over the availability of the QDRO, we cannot say the trial court abused its discretion in valuing these plans. Point denied.

Wife next contends that, even if all the valuations she challenges are correct, the trial court's division of marital property was inequitable. The following chart shows what each party received:

## I. DISPOSITION OF MARITAL PROPERTY

| | WIFE | HUSBAND |
|---|---|---|
| **A. 1982 DECREE** | | |
| 14255 Forest Crest Drive | | $ 150,000 |
| Furniture and Personal Property | Not valued | Not valued |
| Lake House | $125,000 | |
| 1981 Playcraft Boat | | |
| 1981 Evinrude motor | | |
| 1980 Kawaski jet ski | 12,000 | |
| cash | 50,000 | |
| | $187,000 | $ 150,000 |
| **B. 1989 JUDGMENT IN EQUITY** | | |
| His marital interest in his Crown Foods pension & profit-sharing plans | | between $40,000 and $45,000 |
| Merrill Lynch Ready Asset Trust Account | | $ 996.37 |
| Crown Foods Stock (100 shares) | | 13,217.00 |
| 1978 Oldsmobile | $ 3,650 | |
| Her marital interest in her Crown Foods pension and profit-sharing plans | 2,000 | |
| Condominium—Painted Vista Dr. | 35,000 [3] | |
| Total from 1989 judgment | $ 40,650 | between $54,213.37 and 59,213.37 |
| Total of Marital Property | $227,650 | between $204,213.37 and 209,213.37 |

## II. DISPOSITION OF SEPARATE PROPERTY BY THE 1989 JUDGMENT IN EQUITY

| | WIFE | HUSBAND |
|---|---|---|
| Crown Foods Stock (10,114 shares) | | $1,350,000 |
| Union Electric Stock | | 10,000 |
| Miscellaneous bonds | | 25,000 |
| Total of separate property | $0 | $1,385,000 |

---

Using the $45,000 valuation figure for pension plans, Husband received 48 percent of the marital property, and Wife received 52 percent.[4]

A trial court in a dissolution case is not required to make an equal division of marital property. *Golleher v. Golleher,* 697 S.W.2d 547, 550–551 (Mo.App. As such, we cannot say the trial court abused its discretion in making such a division.

**3.** This credit is somewhat questionable because the $50,000 cash settlement was supposedly used to pay for Wife's condominium. However, even if we were to consider the $35,000 as a double charge, Wife still received a total of $192,650 in marital property, which is between 92% and 94% of the amount Husband received.

**4.** If we allow Wife the benefit of the doubt on the condominium issue in n. 3, *supra,* Husband received 52% of the marital property, and Wife received 48%, not an inequitable division.

1985). Rather, the division must be just and equitable. *Id.* The Missouri statutes provide that the trial court shall divide the marital property justly after considering all relevant factors. Section 452.330 RSMo 1986 (Supp.1989). Wife asserts that the trial court failed to consider relevant factors and particularly, "[t]he value of the non-marital property set apart to each spouse." Section 452.330.1(3). She contends the trial court should have taken into account the $1,385,000 that Husband retains in separate property.

Whether Section 452.330 applies to separate equitable proceedings is doubtful inasmuch as Section 452.330 deals with dissolution actions. Even assuming, however, that the section applied, the record does contain evidence that the trial court did consider Husband's separate property. This was the second marriage between the parties. During the thirteen years between their first divorce and their remarriage, Husband acquired an interest in Crown Foods. The parties' second marriage lasted only six years. We find no abuse of discretion by the trial court in its determination that, following a short second marriage, Wife should have no claim to the increase in value of Husband's business. Point denied.

■■■ In her eighth point, Wife contends the trial court erred and demonstrated bias against her when it made specific findings that her second marriage to Husband was her fifth marriage and that she had remarried following the parties' second divorce.

During trial, Wife attempted to portray herself as an individual having little business knowledge or experience who was forced to accept an unfair property settlement and inadequate legal representation. The number of times she was married and divorced prior to the instant proceeding, therefore, is relevant to her credibility. The trial court's finding on this issue reflects a legitimate inference from the evidence that a person married and divorced on more than one occasion is not completely ignorant of either her property rights or her right to proper representation at the

time of dissolution. The trial court acted within its discretion in assessing credibility. Point denied.

In her ninth point on appeal, Wife asserts the trial court erred in failing to award her attorneys' fees under Section 452.355 RSMo. 1986 (Supp.1989). Wife seeks $70,792.55 in attorneys' fees.

■■■ Section 452.355 permits a trial court, in its discretion, to award attorneys' fees in proceedings pursuant to the dissolution statute, Sections 452.300 to 452.415. The present case, however, is a separate equitable proceeding, not a dissolution action. Thus, the dissolution statute is inapplicable. The general rule therefore applies with respect to attorneys' fees. That is, absent specific statutory authority or a contractual agreement, each litigant must bear the expense of his own attorneys' fees.[5] *Dunn v. Bemor Petroleum*, 737 S.W.2d 187, 190 (Mo. banc 1987).

■■■ Wife cites *Alexander v. Sagehorn*, 600 S.W.2d 198 (Mo.App.1980) in which the Southern District, citing Section 452.355, allowed attorneys' fees in a post-dissolution equitable proceeding to set aside a property settlement and decree of dissolution on the basis of fraud. The *Alexander* case, however, has not been followed on this issue, either by the Supreme Court or by this District, and we decline to do so. But even assuming, *arguendo*, that Section 452.355 did apply, the trial court's refusal to award attorneys' fees was no abuse of discretion. Although Wife was successful in persuading the trial court to apportion assets not allocated by the dissolution decree, the trial court allocated each such asset to the party who already possessed it. Wife, therefore, gained nothing tangible from the assertion of her claim. Moreover, she was unsuccessful on her claims of fraud and coercion. We find no error in the trial court's refusal to award attorneys' fees.

■■■ In her final point, Wife asserts the trial court erred in assessing costs against her. She acknowledges that in an equity case, a trial court has inherent, dis-

---

**5.** While certain exceptions to this general rule exist, none applies in this action.

cretionary power to tax costs to either party or to tax them proportionately among the parties. *Gieselmann v. Stegeman*, 470 S.W.2d 522, 525 (Mo.1971). A trial court's determination of this issue will remain undisturbed on appeal, absent an abuse of discretion. *Id.* We find no abuse of discretion by the trial court. Wife was unsuccessful on the majority of her claims. Point denied.

Judgment affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.