Carlene BURRIS, Petitioner–Respondent,

v.

Ansel Ray BURRIS, Respondent–Appellant.

No. 19673.

Missouri Court of Appeals,
Southern District,
Division Two.

July 31, 1995.

Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, for appellant.

Charles M. LeCompte, Springfield, for respondent.

GARRISON, Presiding Judge.

This is an appeal by Ansel Ray Burris (Ansel)[1] from an adverse judgment in an action brought by his former wife, Carlene Burris (Carlene), for fraud in the concealment of marital property at the time of their dissolution. The trial court found for Carlene and awarded her actual damages of $24,000, punitive damages of $5,000 and attorney fees of $10,000.

The parties, who owned and operated a dairy and stock cattle operation, separated on July 17, 1987 after thirty years of marriage. After Carlene filed an action for the dissolution of their marriage, she obtained an appraisal of the marital assets which showed real estate valued at $227,110, cattle at $91,150, and equipment at $21,325. She also served Ansel with interrogatories requesting, among other things, identification of all accounts in financial institutions in which he had an interest, as well as all conveyances, sales and transfers of property with a value of over $100, after the separation. Ansel answered the interrogatories with a listing of bank accounts, which the evidence later disclosed was incomplete, and denied selling or transferring any property.

The dissolution action was set for trial on January 19, 1988. On that day the parties reached a settlement agreement which incorporated a copy of Carlene's appraisal as an exhibit. The settlement agreement, signed by both of the parties, also recited that "[t]he parties agree that this agreement is fair and not unconscionable, and that it divides all marital and non-marital property of the parties."

Carlene filed this suit after receiving a copy of a depreciation schedule for their joint 1987 income tax return which indicated the existence of property not included in the

---

1. The parties are referred to in this opinion by their first names for purposes of clarity and ease in reading the opinion. No disrespect is intended by doing so.

separation agreement or her appraisal.[2] She also presented evidence at the trial about the existence of other marital property which was not included in the appraisal and separation agreement. Included was evidence that after the separation Ansel had sold two tractors and a baler for $6500 but re-purchased the tractors after the dissolution for $5500. The evidence also indicated that after the separation Ansel sold cattle and placed that money, as well as some milk checks, totalling $17,186.86 in an account at Great Southern Savings and Loan in the name of Dianna Perkins, who is his present wife's ex-daughter-in-law. Ms. Perkins closed that account on December 24, 1987 by writing a check in the amount of $17,490.51 to Ansel, who cashed the check, obtained a cashier's check in that amount, and held it until approximately one month after the dissolution when he deposited it in his account at the Wright County Mercantile Bank. None of that information was disclosed in Ansel's answers to interrogatories.

The trial court found that through his intentional acts of concealment and lack of good faith in answering interrogatories and listing property in the separation agreement, Ansel caused property which it valued at $47,976 (including $17,490 from the Dianna Perkins account)[3] to be kept from Carlene and the court so that the property was not considered in the division of marital property. It concluded that Carlene had received less property than she otherwise would have. The trial court, for the purpose of determining damages, assumed that Carlene would have received one-half of those items at the time of the dissolution and therefore entered a judgment for actual damages of $24,000. It also awarded her punitive damages in the amount of $5,000 and $10,000 for attorney fees.

On this appeal, Ansel contends that the trial court erred (1) in making an award of actual damages because Carlene failed to prove all of the elements of fraud; (2) in making an award of punitive damages; and (3) in awarding attorney fees.

Review of a court-tried case such as this is pursuant to Rule 73.01(c).[4] As that rule is interpreted, this court is to sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). An appellate court should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong. *Id.* Considerable deference is accorded judgments turning on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–776 (Mo.App.S.D.1992). The appellate court is to give due regard to the opportunity of the trial court to judge the credibility of witnesses. Rule 73.01(c)(2). In fact, the trial court may believe or disbelieve all, part, or none of the testimony of any witness. *Willard v. Doyle*, 612 S.W.2d 884, 888 (Mo.App. S.D.1981). We accept, therefore, as true the evidence and inferences therefrom that are favorable to the trial court's decree and we disregard all contrary evidence. *Stein v. Stein*, 789 S.W.2d 87, 92 (Mo.App.E.D.1990).

In his first point on this appeal, Ansel challenges the sufficiency of the evidence to support a finding of fraud. The elements of a tort action for fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of its truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in the manner rea-

---

**2.** The evidence indicated that Carlene was not present when her appraisal was conducted, but Ansel escorted the appraiser when he viewed the property.

**3.** This included, in addition to the $17,490, a bumper stock trailer, a flatbed trailer, an International 706 tractor with loader, a 2840 John Deere tractor, a Farmall tractor, a Vermeer round baler, a horse trailer, a hay rake, a 1986

Honda four-wheeler, a trailer bought in West Plains, a 730 Case tractor, a manure spreader, a 25,000 watt generator, two bulls, and a Hesston haybine.

**4.** All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1994.

sonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). Ansel contends that Carlene failed to prove elements (1), (6), (7), (8), and (9).

■ In arguing that Carlene failed to prove a representation, Ansel refers to testimony that neither he nor his lawyer told her that the appraisal attached to the property settlement agreement contained all of the property. The separation agreement, however, contained a recital that it was dividing all marital and non-marital property of the parties.

Carlene's interrogatories also sought to determine the existence of accounts in financial institutions which Ansel maintained or had an interest in since the separation, together with the details of any transactions in which he had sold, conveyed or transferred any property valued at more than $100. Although Carlene's interrogatories requested the information, Ansel's answers failed to disclose the sale of the International and John Deere tractors and a baler less than a month after the separation for $6500. Also not disclosed were the cattle sales and the deposit of $17,186.86 in the Great Southern account of Dianna Perkins. Those items were not included in the property settlement agreement entered into on the day of the dissolution.

In *Curtis v. Kays*, 670 S.W.2d 887, 893 (Mo.App.W.D.1984), the court said:

> In addition to being free of fraud, agreements between husband and wife in settlement of property rights should be fair, just and equitable. [Citation omitted.] Concealment of a material fact of a transaction which a party has a duty to disclose constitutes fraud as much as though an affirmative representation is given. [Citation omitted.] If a fact is peculiarly within the knowledge of one party by reason of his superior knowledge and not within the fair

and reasonable reach of the other party, a legal duty of disclosure arises and concealment of the fact by silence is fraud. [Citation omitted.]

In the instant case the trial court found that Ansel handled and decided all business and financial matters, leaving Carlene to depend on his judgment. This finding was amply supported by the record. Under these circumstances, there was sufficient evidence of a representation.

■ Ansel also contends that there was insufficient evidence of Carlene's right to rely on the representations, her actual reliance on them and her ignorance of their falsity. To the contrary, he argues that she knew that the agreement did not mention all of the property. He points to Carlene's testimony that she had questions about the appraisal and signed the agreement although she was aware that the appraisal did not contain everything she thought it should. There was also evidence that she was aware, at the time of the separation, of the four-wheeler and two tractors and was aware that they were not on the appraisal. Ansel, therefore, argues that this knowledge should prevent a finding of fraud in this case.

Ansel's point relied on is that there was insufficient proof of the elements of fraud. There was no dispute, however, that Ansel concealed the existence of the money which was originally placed in the Dianna Perkins account and that Carlene had no knowledge of it. The concealment of this money alone would have justified a finding of fraud under the circumstances of this case. Carlene's knowledge of the existence of *some* of the items of property would not prevent a finding of fraud based on the concealment of others.

■ Ansel also contends that Carlene failed to prove the necessary element of damage proximately caused by the fraud.[5] He argues that there was no proof of damages, the trial court assumed, for the purpose of damage calculations, that Carlene would have received one-half of the value of the property, and the judgment was, therefore, based

---

**5.** We interpret Ansel's point relied on as challenging the entry of any judgment for damages as

opposed to the amount actually awarded.

on speculation. He relies on *Manor Square, Inc. v. Heartthrob of Kansas City, Inc.*, 854 S.W.2d 38 (Mo.App.W.D.1993), and *Burch v. Union Life Ins. Co.*, 319 S.W.2d 908 (Mo. App.W.D.1959), for the proposition that speculative damages are not allowable.

*Burch* involved an action for breach of contract in which the appellate court noted the rule that damages which are entirely speculative cannot be allowed. The *Burch* court, however, approved the submission of plaintiff's future damages and quoted, with approval, language from cases indicating that the rule prohibiting speculative damages applies to damages which are uncertain as to cause rather than uncertain as to the measure or extent. In so holding, the court said "[t]he amount might be uncertain, but the fact that he was damaged by the breach is certain." *Id.* at 912.

In *Manor Square*, the defendant filed a counterclaim for lost profits based on evidence that it would have received 50% of a competitor's business if the plaintiff (landlord) had not rented space to that competitor. The testimony of one witness was that he assumed that the defendant would have received that much of the business enjoyed by the competitor. The appellate court, noting that the witness had not examined any actual sales figures from the competitor and had no comparison of the income and expenses of the two businesses, held that this evidence was speculative and unsubstantiated. It concluded, therefore, that defendant had not demonstrated that it had a sufficient evidentiary basis to support an award of damages and affirmed a summary judgment in favor of the landlord.

In the instant case, the trial court[6] had before it evidence concerning both the property which was divided and that which was the subject of this tort action. The court found that Ansel's intentional acts of concealment caused property valued at $47,976 to be kept from Carlene and the court so that it was not considered in the division of marital property. It found that "[t]his caused [Carlene] to receive less property than she would have received had she, her attorneys, and the Court known of its existence." This consti-

tuted a finding by the trial court that Carlene was damaged by the acts of Ansel, a finding which we do not conclude was erroneous.

Ansel also complains that the trial court, in setting the amount of damages, recited that "[f]or the purpose of determining damages, the Court will assume that [Carlene] would have received one half of the value of the property." He points to this finding as evidence of the speculative nature of the damages awarded and argues that it requires reversal. We are unable to agree with that conclusion.

As did the court in *Burch*, the court in *Ohlendorf v. Feinstein*, 670 S.W.2d 930, 933 (Mo.App.E.D.1984), recognized that there is a distinction between the degree of certainty required to establish the fact of damage and "the lesser certainty required regarding the amount of damages." The court also said:

> "One whose wrongful conduct has rendered difficult the ascertainment of damages cannot escape liability because the damages cannot be measured with exactness." [Citation omitted.] Further, where the fact of damage caused by a defendant's wrongdoing is clear, "it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the jury, subject to the usual supervisory power of the court." [Citation omitted.]

*Id.*

In *Hess v. Hess*, 397 Pa.Super. 395, 580 A.2d 357 (1990), the former spouses had signed a separation agreement at the time of their divorce which provided that they would make a full, complete and accurate disclosure of all their assets. The agreement provided that the husband was to receive their marital interest in two parcels of land valued at a total of $45,000. Unknown to the wife, husband was negotiating a sale of those lands for $800,000 which he consummated following the divorce and from which he received a net amount of $401,576. Wife filed suit alleging fraud and breach of contract which was tried to a jury. The jury returned a verdict in

---

6. The judge was also the same judge who entered the parties' dissolution decree.

favor of wife in the amount of $200,000 in compensatory damages and $40,000 in punitive damages. The appellate court affirmed the award of actual damages of approximately one-half of the net amount received by the husband.

Under the applicable standard of review and circumstances of this case, we find no error as presented in the first point and, therefore, deny the same.

In his second point, Ansel contends that the award of punitive damages was not supported by evidence of an evil motive. He first argues that because Carlene failed to prove the elements of fraud, as argued in his first point, the underlying judgment for fraud must be reversed and punitive damages are not recoverable in the absence of a judgment for actual damages. As discussed above, however, we have declined to reverse the judgment for actual damages based on fraud.

He also contends that punitive damages are not recoverable in this case because: "[t]he tangible marital property that the court found Ansel concealed was in fact known to Carlene, and Ansel's actions to protect a portion of the funds resulted from Carlene's actions in writing unauthorized checks on the account in which the funds were deposited." In this regard he argues that Carlene had knowledge of some of the items of property he was found to have concealed; the trial court mistakenly found that he concealed other items of property which were not owned by the parties; and his concealment of some property was justified by Carlene's actions.

Ansel concedes that he attempted to conceal money but seeks to justify it on the basis of his testimony that Carlene had written checks without his approval and had gone on a "splurge writing checks." The trial court was not required to believe Ansel's testimony about his motives for placing a substantial amount of money in another person's name and in not placing it in an account bearing his name until after the dissolution. Likewise, the trial court was not required to find that because Carlene may have known of some items of property such as the tractors and four-wheeler, when she left the farm, that she necessarily knew that they were in existence when the appraisal was made or the settlement agreed to, as opposed to having been sold with the proceeds being reflected in the bank accounts which were revealed.

Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others. *Burnett v. Griffith,* 769 S.W.2d 780, 789 (Mo. banc 1989). It is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for punitive damages. *Id.* at 787.

In the instant case, the trial court found that Ansel had an evil motive in concealing marital property from Carlene and her attorney and "[t]hat motive was to minimize the marital estate so that [Carlene] would settle for less property than she might otherwise have, or, in the event of a trial, the Court would have less to divide." This finding was amply supported by the evidence.

Not only did Ansel conceal over $17,000 in cash until after the dissolution, but there was also evidence from which the trial court could have found that he intentionally failed to reveal information called for in interrogatories; he failed to inform Carlene's appraiser of property which was part of the marital estate; and he entered into the separation agreement knowing that it did not, by its terms, include all of the marital property, including two tractors sold by him (which he re-purchased after the dissolution) and other property which had been excluded when he pointed out the marital property to the appraiser. Indicative of his state of mind in connection with his concealment of marital property in the instant case was Ansel's evasive testimony in which he first denied placing money in the Dianna Perkins account, and then offered no explanation for why he did so other than "[b]ecause I wanted to, I suppose." He was also unable to explain why he held the cashier's check representing the proceeds of that account for over one month until after the dissolution was entered. He sought to justify his failure to reveal some of the information called for in the interrogatories about property sold or bank

accounts in which he had an interest after the separation by saying that "I didn't know we had separated" and "See, she just run off." This was despite the fact that Carlene never returned to the home after leaving in July 1987 and the interrogatories were served on him in connection with the subsequently filed dissolution action.

■ Whether punitive damages should be awarded is a matter for the discretion of the trial court and our review is limited to whether that discretion was abused. *Stephenson v. First Missouri Corp.*, 861 S.W.2d 651, 657 (Mo.App.W.D.1993). In the instant case, we find no such abuse of discretion. Ansel's second point is denied.

In his third and final point, Ansel contends that the trial court erred in awarding attorney fees to Carlene. He argues that such fees are not authorized in a common law tort action for fraud, and in any event Carlene received sufficient property in the dissolution to pay her own.

■ Missouri follows the "American rule" which, with certain exceptions, requires that litigants bear the expense of their own attorney fees. *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 339 (Mo.App. S.D.1991). Ordinarily the exceptions to that rule are included in four categories: recovery of fees pursuant to contract, recovery authorized by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and reimbursement when ordered by a court of equity to balance benefits. *Id.* at 340.

■ In the instant case, the trial court awarded Carlene attorney fees based on § 452.355.1.[7] That section, however, relates to "proceedings under sections 452.300 to 452.415." This was a common law fraud action for damages. The trial court acknowledged it as such and noted that it was not an action under Chapter 452. It found, however, that it had authority to grant attorney

fees pursuant to § 452.355.1 based on *Alexander v. Sagehorn*, 600 S.W.2d 198 (Mo.App. S.D.1980). This case is distinguishable, however, from *Alexander*. In *Alexander*, plaintiff filed a suit in equity alleging that defendant had misrepresented the value of certain marital property and sought to set aside that portion of the dissolution decree which incorporated the separation agreement and requested a redistribution of the marital property pursuant to § 452.330. This court held that attorney fees were authorized by § 452.355 because it was an action under § 452.330 for a redistribution of marital property. *Id.* at 202. Another Missouri court, however, has questioned the applicability of § 452.355 even in post-dissolution equitable proceedings and held that it did not apply in an action to distribute property not previously allocated and set aside because it was not a dissolution action. *See Stein v. Stein*, 789 S.W.2d at 97.

The instant suit was not filed pursuant to §§ 452.300 to 452.415. Rather, it was clearly a tort action for damages. Generally, attorney fees are not recoverable in such actions. *Edwards v. Smith*, 322 S.W.2d 770, 777 (Mo. 1959). This general rule applies in suits based on fraud. *See Rosenblum v. Jacks or Better of Am. West*, 745 S.W.2d 754, 765 (Mo.App.E.D.1988).

None of the other exceptions to the "American rule" concerning an award of attorney fees applies in the instant case. The trial court, therefore, erred in awarding attorney fees to Carlene's attorney. The judgment of the trial court awarding attorney fees is reversed. In all other respects, the judgment is affirmed.

CROW and PARRISH, JJ., concur.

---

7. Section 452.355.1 provides:

The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.