Ralph J. Haslag, Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for plaintiff-respondent.

## GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff-Respondent,

v.

## WOOLBRIGHT MOTORS, INC., d/b/a Woolbright Leasing, Inc., Defendant-Appellant.

### No. 14484.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 15, 1986.

FLANIGAN, Judge.

Plaintiff General Motors Acceptance Corporation ("GMAC"), brought this action in replevin against defendant Woolbright Motors, Inc., ("Woolbright"), seeking possession of a 1982 Cadillac automobile. The trial court, sitting without a jury, found the issues in favor of GMAC and awarded it possession of the vehicle. Woolbright appeals.

In 1978 GMAC and Woolbright entered into a "Retail Lease Service Plan Agree-

ment," (Agreement 1),[1] which, in general, set forth the terms upon which GMAC granted permission to Woolbright to lease, to third persons, motor vehicles in which GMAC had a security interest.

On April 28, 1982, Woolbright leased the Cadillac, the subject of this litigation, to Renflow Oil Co., ("Renflow"). In connection with this transaction Woolbright, as lessor, and Renflow, as lessee, entered into a Non-Maintenance Lease Agreement, (Agreement 2).[2]

Also on April 28, 1982, under the arrangement contemplated by Agreement 1, Woolbright executed, in favor of GMAC, a document entitled "Retail Lease Service Plan Security Agreement," (Agreement 3).[3]

**1.** [AGREEMENT 1]
RETAIL LEASE SERVICE PLAN
AGREEMENT
(SUMMARIZED)

From time to time GMAC will grant permission to Woolbright to lease to third persons motor vehicles in which GMAC has a security interest. This agreement applies to the billing and collection by GMAC of rentals payable under such a lease pursuant to a security agreement (see Agreement 3). Woolbright will furnish GMAC with information concerning a prospective lessee so as to enable GMAC to investigate the lessee's credit standing. When GMAC notifies Woolbright that GMAC will administer the rentals, Woolbright will furnish GMAC with (1) an executed security agreement covering the vehicle (see Agreement 3), and (2) an executed copy of a non-maintenance lease agreement (see Agreement 2).

The first month rental will be collected by Woolbright and the subsequent rentals will be billed by GMAC to the lessee and collected by GMAC. GMAC will apply the rentals to Woolbright's obligations to GMAC under the security agreement. GMAC will repossess a leased vehicle if repossession is necessary by reason of a lessee's default and will return the leased vehicle to Woolbright within 90 days after default in payment of rent.

Woolbright will pay GMAC the unpaid balance under the applicable security agreement upon the earliest of these events: sale of the vehicle, the 30th day following termination of the lease term, the 30th day after Woolbright obtains possession of the vehicle for any reason, or "otherwise in accordance with the security agreement."

Upon payment in full of [Agreement 3] GMAC will reassign to Woolbright its right to any rentals.

[A guaranty, attached to Agreement 1, was signed by Carl Woolbright and Pansy Woolbright, as guarantors, who unconditionally guaranteed payment, under Agreement 1 and "applicable security agreements," of the indebtedness of Woolbright to GMAC.]

**2.** [AGREEMENT 2]
NON–MAINTENANCE LEASE AGREEMENT
(SUMMARIZED)

Woolbright leases the Cadillac to Renflow. Renflow will pay all maintenance; title to vehicle shall at all times remain in Woolbright.

The Cadillac has an original value of $23,500. At the completion of the term of this lease (24 months) it will have an agreed depreciated value of $12,500. The monthly rental (including taxes and interest) is $755.20, and first payment is due and made on April 28, 1982, to Woolbright.

In the event of default in any payment hereunder Woolbright shall have the right to terminate the lease and to take immediate possession of the vehicle.

Renflow acknowledges that the rentals payable under this lease have been assigned to GMAC and agrees to make all future rental payments due Woolbright to GMAC. GMAC shall have no obligation or responsibility under this lease nor shall GMAC be required to perform any obligation of Woolbright under this lease. This lease is subject and subordinate to [Agreement 3].

Immediately upon the termination of this lease Renflow will return the vehicle to Woolbright and Woolbright shall sell it at wholesale in such commercially reasonable manner as Woolbright shall determine. If the net sale price exceeds $12,500, Woolbright shall pay such excess to Renflow; if the net sale price is less than $12,500, Renflow will pay the deficiency to Woolbright.

**3.** [AGREEMENT 3]
RETAIL LEASE SERVICE PLAN SECURITY
AGREEMENT
(SUMMARIZED)

Woolbright promises to pay to the order of GMAC the sum of $27,683.44 in successive monthly installments of $724.28 commencing May 28, 1982, and one final installment of $11,025 on the 28th day of the second month following the due date of the last monthly installment.

If any of [the sum of $27,683.44] is paid in advance, Woolbright will pay an additional prepayment premium, but such pre-payment premium is waived by GMAC if the collateral is destroyed or in the judgment of GMAC is rendered unsuitable for further lease.

For purpose of securing payment of the aforesaid indebtedness and all other indebtedness now or hereafter owing from Woolbright to GMAC, Woolbright hereby grants a security interest to GMAC in the collateral described below including any attachments or accessories and hereby assigns to GMAC all of Woolbright's

Renflow obtained possession of the Cadillac on April 28, 1982, and made the first rental payment, on that date, to Woolbright. The succeeding 23 monthly payments, as required by Agreement 2, were made by Renflow to GMAC, the last one being made in March 1984. At the conclusion of that lease in 1984, Renflow surrendered possession of the Cadillac to Woolbright. Woolbright refused to deliver possession of the Cadillac to GMAC or to pay GMAC the then value of the Cadillac, which, according to Agreement 2, was $12,500.

On January 23, 1983, Woolbright filed a bankruptcy proceeding in United States Bankruptcy Court. On September 6, 1983, GMAC and Woolbright entered into a document entitled "Settlement Agreement," (Agreement 4).[4] On this date Agreement 2

still had several months to run and Renflow continued, as before, to make its rental payments to GMAC.

On this appeal it is Woolbright's position that GMAC, in entering into Agreement 4, released any claim it might have for possession of the Cadillac. It is GMAC's position that Agreement 4 specifically reserved that claim to GMAC. In essence, the parties disagree on the operation of paragraph 2 of Agreement 4 with respect to GMAC's right to possession of the Cadillac when this action was filed in August 1984.

There was no significant factual dispute. The certificate of title to the Cadillac showed GMAC as a lienholder and Woolbright as the owner. After the execution of Agreement 4 in September 1983, the certificate of title remained in the possession of GMAC and the lien was not re-

---

rights and interests in and to all rents hereafter becoming payable from the lease or rental of the collateral; all subject to the terms and conditions set forth on the reverse side hereof.

COLLATERAL DESCRIPTION

| Year | Make | Vehicle Identification No. | Unit No. |
|------|------|----------------------------|----------|
| 1982 | Cadillac | 1G6AL5785CE634516 | |

Terms and conditions:

3. The obligation secured hereunder shall be payable on the earliest of: (i) 30 days after end of lease term or (ii) 30 days after Woolbright obtains possession of the property for any reason unless the property has been placed in lease by another lessee approved by GMAC.

4. In the event ... that a proceeding in bankruptcy be instituted by Woolbright ... or if Woolbright defaults with any obligation to GMAC, GMAC may take immediate possession of said property.

6. Woolbright hereby assigns to GMAC and authorizes GMAC to do all things necessary to effectuate all of Woolbright's rights and interest in and to any rents becoming payable with respect to any property under each and every lease, provided, GMAC shall administer said rents in accordance with the terms of [Agreement 1]

. . . . .

4. [AGREEMENT 4]

SETTLEMENT AGREEMENT
(Pertinent portions)
[Parties to this agreement are GMAC, Woolbright, and the guarantors of Agreement 1.]
"WHEREAS, GMAC has asserted a claim against [Woolbright] and [the guarantors] in the principal amount of $173,970.07; and,

WHEREAS, the parties hereto are desirous of reaching a satisfaction and accord and settlement of all claims between the parties hereto on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual terms, conditions and covenants herein contained, the parties hereto agree as follows:

1. Thirty (30) days from the date of the entry of a non-appealable order dismissing [Woolbright's] Chapter 11 case now pending in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division, being Case No. 83–00117(1), [Woolbright] or [the guarantors] shall deliver to GMAC the sum of $16,666.66. [Woolbright] or [the guarantors] shall pay an additional sum of $16,666.66 sixty (60) days from the entry of such order and a third and final payment of $16,666.67 ninety (90) days from the entry of such order.

2. From the date of the execution of this Agreement, provided the payments referred to in paragraph 1 are made, GMAC covenants not to sue or commence or to take any action to collect, assess or recover any claim it has against [Woolbright] or [the guarantors] including but not limited to [the guarantors'] guarantees and any existing or future liability which may arise under existing agreements between the parties. Upon receipt of the third installment payment referred to in paragraph 1, GMAC agrees to release and hold harmless [Woolbright] and [the guarantors] from any claim or demand for payment of money or property it may have against them, jointly and severally. *By such covenant, GMAC shall not, however, be restricted or limited in its collection or liquidation of any security or collateral held by GMAC."* (Emphasis added.)

. . . . .

moved. Carl Woolbright, Woolbright's vice-president, testified that Woolbright did not request removal of the lien. Carl Woolbright conceded that Woolbright had possession of the Cadillac when the action was filed and that GMAC had demanded possession, which was refused.

Woolbright fulfilled paragraph 1 of Agreement 4 by making the three payments of $16,666.66 and obtaining entry of the non-appealable order dismissing the bankruptcy proceeding.

At the expiration of the 24–month term of Agreement 2 in 1984, the Cadillac was delivered to Woolbright but Woolbright did not pay GMAC the final installment of $11,-025 called for by Agreement 3, nor did Woolbright deliver the Cadillac to GMAC. The Cadillac was the only automobile financed by GMAC which Woolbright "had out on lease."

After September 1983, GMAC repossessed 18 to 20 automobiles which had been sold by Woolbright to retail customers and which were financed by GMAC under retail security agreements which, according to GMAC's witness Richard Bartlett, "work just like the lease agreement works. The customers agreed to pay GMAC with a dealer's endorsement and the same thing on a lease agreement, with the dealer's endorsement." Woolbright never questioned GMAC's right to repossess those automobiles, although they were in the actual possession of the customers, and not GMAC, in September 1983.

There was no evidence showing what items constituted GMAC's claim, in the amount of $173,970.07, mentioned in the opening recital of Agreement 4. At the time that recital was made, the final installment of $11,025 under Agreement 4 was not yet payable.

Seeking to uphold its right to possession of the Cadillac, GMAC argues that it was preserved by the italicized portion of paragraph 2 of Agreement 4.

Seeking to counter GMAC's position, Woolbright's brief states:

"The car in question was in the physical possession of Woolbright at the time suit was filed and titled in Woolbright's name although the certificate of title itself was in the physical possession of GMAC. Thus it is Woolbright's position that the Cadillac in question is the 'security' or 'collateral' for [Agreement 3] but that GMAC did not 'hold' the security or collateral, or it was not 'held' by GMAC. Therefore, GMAC was not entitled to replevin of the car as the evidence is that this dispute between the parties was previously settled by the settlement agreement."

As this court understands Woolbright's position, it is this:

(1) Woolbright's obligation to make the final installment of $11,025, called for under Agreement 3, was included in the language, "any existing or future liability which may arise under existing agreements between the parties," as that language is used in paragraph 2 of Agreement 4. As to that final installment GMAC, by paragraph 2 of Agreement 4, "covenants not to sue." Upon receipt of the third installment payment [which Woolbright paid], GMAC agrees to release Woolbright "from any claim or demand for payment of money or property" GMAC may have against Woolbright.

(2) The last sentence of paragraph 2 of Agreement 4—"By such covenant, GMAC shall not, however, be restricted or limited in its collection or liquidation of any security or collateral held by GMAC"—is of no aid to GMAC with respect to the Cadillac for the reason that the Cadillac was not in the physical possession of GMAC when Agreement 4 was executed and thus was not "held" by GMAC.

"If the terms of a contract are clear and unambiguous the contract will be enforced or given effect in accordance with its terms, and without resort to construction to determine the intention of the parties.... In such case the construction of the parties, if at variance with the written terms, will not be followed, ... but the contract will be con-

strued as written.... When the language of a contract is plain, there can be no construction because there is nothing to construe.... Construction is necessary, however, where the terms of a contract are ambiguous." *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 851[11, 12] (Mo. banc 1960).

■ "[W]here a contract is not clear it is construed as it is understood and acted upon by the parties." *J.E. Blank v. Lennox Land Co.*, 174 S.W.2d 862, 868[8] (Mo. banc 1943).

By Agreement 3 Woolbright granted "a security interest to GMAC in the collateral described below." The "collateral described below" was the Cadillac. The language of the second paragraph of Agreement 3 reinforces the view that the word "collateral" refers to the vehicle itself. In September 1983 the Cadillac was not "held," at least in the physical sense, by GMAC. Such, of course, is Woolbright's argument. However, the italicized portion of Agreement 4 is not limited "to collateral held by GMAC." Also reserved to GMAC, by that sentence, is "its collection or liquidation of any security or collateral held by GMAC." In view of the relationship of the parties, and the type of business in which they were engaged—the financing, leasing and selling of automobiles which, ordinarily, were in the physical possession of third persons—it is arguable that the italicized sentence means that GMAC retained its right to take into possession (collect) the vehicle and convert to cash (liquidate) its security interest (security) in it.

If, as Woolbright contends, the italicized sentence of Agreement 4 did not apply to the Cadillac, the following would be true:

1. Because Woolbright fulfilled its obligations under paragraph 1 of Agreement 4, Woolbright's obligations to GMAC under Agreement 3 ceased to exist. Woolbright no longer had a duty to make any rental payments under Agreement 3 or to pay the final installment of $11,025. Agreement 3 had been paid in full.

2. Since Agreement 3 had been paid in full, GMAC was under a duty to reassign to Woolbright "its right to any rentals" (see Agreement 1) which would include rentals Renflow was paying on the Cadillac under Agreement 2.

3. At least by the time Renflow completed making the 24 payments under Agreement 2, GMAC's interest, as an unpaid creditor in the Cadillac, ceased to exist. GMAC would no longer have a lien on the vehicle or a right to possess the certificate of title to it reflecting such lien. Woolbright would be the unconditional owner.

If the italicized sentence of Agreement 4 is ambiguous, and it would be difficult to claim otherwise, resort may be had to the conduct of the parties to see how they interpreted it.

After Agreement 4 was executed in September 1983, and after Woolbright fulfilled its obligations under paragraph 1 of Agreement 4 (the last of Woolbright's three payments of $16,666.66 was made on December 13, 1983, and the non-appealable order dismissing the bankruptcy proceeding had previously been entered), GMAC was still in physical possession of the certificate of title and that title showed GMAC as a lienholder. Significantly, Woolbright at no time demanded release of the lien or possession of the certificate of title. Woolbright, as a car dealer itself, knew the importance of a certificate of title to a motor vehicle with respect to proving or transferring its ownership. At no time after September 1983 did Woolbright make claim to any of the rentals which Renflow continued to pay to GMAC, nor did Woolbright demand a reassignment of those rentals.

The foregoing conduct on the part of Woolbright is inconsistent with the construction which Woolbright now seeks to place upon Agreement 4. On the other hand, when Agreement 2 terminated, and Renflow was no longer entitled to possession of the Cadillac, GMAC immediately

sought possession of it and Woolbright refused to deliver possession.

The conduct of both GMAC and Woolbright, prior to the institution of the present action, was inconsistent with Woolbright's construction of the italicized portion of Agreement 4 and was consistent with GMAC's construction of it. The trial court was entitled to find, as it did, that GMAC, and not Woolbright, was entitled to possession of the Cadillac upon termination of Agreement 2 when Renflow's right to possession ceased to exist.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.