**CITY OF FULTON, Missouri,**
Appellant/Cross–Respondent,

v.

**CENTRAL ELECTRIC POWER COOP-
ERATIVE,**
Respondent/Cross–Appellant.

No. WD 43656.

Missouri Court of Appeals,
Western District.

May 14, 1991.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
June 27, 1991.

Donald James Mariea, Fulton, for appellant/cross-respondent.

Robert C. Smith, Jr., Columbia, for respondent/cross-appellant.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

The City of Fulton, Missouri (Fulton) appeals the trial court's judgment in a contract dispute between Fulton and Central Electric Power Cooperative (Central). Central cross-appeals.

Fulton is a municipal corporation of the State of Missouri which owns and operates an electrical generating and distribution system. Fulton purchases quantities of electrical power from outside sources for the purpose of supplying electricity to its customers in and around the City of Fulton.

Central is a Missouri rural electric cooperative organized and existing under the laws of the State of Missouri and is engaged primarily in the business of generation and transmission of electrical power to distribution cooperatives located in the central part of Missouri. Central purchases

electric power and energy from Associated Electric Cooperative, Inc. (Associated).

Associated is a generation and transmission cooperative, which among other things, provides bulk electric power and energy at wholesale to its six member-owner rural electric cooperatives. Central is one of the six rural electric cooperatives receiving electricity from Associated. Central, in turn, transmits and resells electric power and energy to its member distribution cooperatives, which then distribute and sell such electricity at retail to their respective member-owners consisting of rural customers in central Missouri.

On December 1, 1976, Fulton entered into a long-term contractual agreement with the City of Sikeston, Missouri (Sikeston). The contract provides for Fulton to purchase specified amounts of electricity from Sikeston into the 1990's. However, Fulton had no transmission lines extending between Fulton and Sikeston. Therefore, Fulton entered into an agreement with Associated to transmit the electric power and energy purchased from Sikeston over the lines of Associated. This transmission of electricity across another's line is known as "wheeling."

Fulton's contract for wheeling of electric power across Associated's lines was also entered on December 1, 1976. The contract between Fulton and Associated was coextensive with the purchase contract between Fulton and Sikeston. The contract provided that Fulton would have to enter into a separate agreement with Associated's member-owner rural electric cooperative for wheeling beyond the nearest Associated 161/69 kilovolt (kv) substation. This necessitated Fulton's agreement with Central which was entered into on August 5, 1977.

Under Fulton's contract with Central, Fulton agreed to pay a wheeling rate of eighty cents per kilowatt per month "for the peak year kilowatts delivered during the billing month or the amount of kilowatts contracted, whichever is greater,"

($0.80/kwm), for the first five years of the contract. The five year period was to begin when the Sikeston power plant became operational. The contract provided that after the first five years the wheeling rate was to be renegotiated. The contract also provided that the agreement was subject to termination by either party after the first five years upon at least 24 months written notice to the other party.[1]

The initial five year term of Fulton's contract with Central ended September 1, 1986. The parties attempted without success to negotiate a new wheeling rate. Upon failure to negotiate a new wheeling rate, Central notified Fulton that it would continue to wheel energy, but that payment was expected in the amount of $1.80/kwm. Fulton then filed this action to enjoin Central from refusing to wheel electric power at the rate of $0.80/kwm and requested that the court determine a reasonable rate for the remaining term, if any, of the contract.

Pursuant to an agreement of the parties the trial court granted a preliminary injunction which continued the $0.80/kwm rate and required Fulton to pay an additional sum of $1.00/kwm into an escrow account pending the outcome of the litigation. The trial court then proceeded to decide the case in a bifurcated fashion.

The court first held a hearing to determine whether a valid, enforceable contract existed between the parties after the initial five year term. At the conclusion of the first hearing the court entered findings of fact and conclusions of law. The court held that a valid contract existed between Fulton and Central past the initial five year term which required two years notice prior to termination, leaving open to negotiation the wheeling rate beyond the initial five years.

In the second part of the bifurcated proceeding the court heard evidence and without formal findings and conclusions ordered that a reasonable wheeling rate past the initial five year term of the contract

---

1. Unlike most public utilities, Central's rates are not regulated by any state or federal regulatory agency. See § 394.010, et seq., RSMo 1986.

was $1.39/kwm. Fulton and Central both appeal.

Applicable to all points raised on appeal by both Fulton and Central is the standard of appellate review in a court tried case which directs that the appellate court must sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In its first point Fulton argues that the contract required that the wheeling rate of $0.80/kwm was applicable beyond the initial five year period until the contract expired pursuant to written notice of termination.

In Fulton's contract with Central, the rate for Central's wheeling service was governed by section 8 of the contract which provided that during the initial five year term the rate would be $0.80/kwm. The only contract language addressing the wheeling rate after the initial five year term was section 8(d) which stated, "Fulton agrees after the five-year term to renegotiate the rates of wheeling of power....."

The initial five-year term expired September 1, 1986, after which Fulton and Central attempted to negotiate a new wheeling rate until December, 1986. During the course of their negotiations Central offered to accept $1.80/kwm and Fulton offered to pay $1.22/kwm. The parties were not able to agree upon a new wheeling rate and this litigation followed.

■ The cardinal rule in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention. *Wickham v. Wickham*, 750 S.W.2d 544, 546 (Mo.App.1988). Where there is no ambiguity in the contract the intention of the parties is to be determined from the contract alone. *Id.* Where a contract is not clear it is construed as it is understood and acted upon by the parties. *General Motors Acceptance Corporation v. Woolbright Motors, Inc.*, 718 S.W.2d 638, 642 (Mo.App.1986).

■ While the law generally requires that an agreement must fix a price or provide a method to ascertain the price in order to form an enforceable contract an exception is recognized where there is no statement at all as to price and the contract has been executed, in which case the law implies a standard of reasonableness. *Computer Network v. Purcell Tire & Rubber Company*, 747 S.W.2d 669, 667 (Mo. App.1988).

■ The terms of the contract between Fulton and Central provided for renegotiation after the initial five-year term. The parties attempted negotiation of a new wheeling rate but were unsuccessful. The trial court did not err by failing to impose a wheeling rate of $0.80/kwm beyond the initial five-year term. The contract provided for renegotiation and the actions of the parties showed that they understood the contract to require renegotiation.

Fulton's first point is denied.

■ In Fulton's second point it challenges the evidence to support the trial court's judgment establishing a reasonable wheeling rate beyond the initial five-year period in the amount of $1.39/kwm. Fulton argues that the rate should have been lower. In Central's cross-appeal it argues that the new rate of $1.39 was against the weight of the evidence. Central argues that the rate should have been higher.

The trial court is free to accept or reject all, part or none of the testimony of any witness. *Stein v. Stein*, 789 S.W.2d 87, 92 (Mo.App.1990). In reviewing a judgment in a court tried case, the appellate court must accept as true evidence and reasonable inferences therefrom that are favorable to the trial court's decree and disregard all contrary evidence. *Id.*

The court's order setting the new wheeling rate read as follows:

Court finds from evidence adduced that rate determination should be made on basis of 69KV system and that 161KV should not be included. Court finds from all evidence adduced that a reasonable rate to wheel power after expiration of original rate would be $1.39 per killowatt per month. So ordered. Costs taxed equally. Court further notes that testi-

mony of Ray Stanley is basis for determination made.

The electric power purchased by Fulton from Sikeston was transmitted over Associated's system to the Associated 161/69kv substation nearest Fulton. The power was then transmitted over Central's system to Central's 69kv substation near the eastern city limit of Fulton. Central's system consisted of a grid which contained 161 kv lines and 69 kv lines. The grid was described as a network where the electricity would follow the course of least resistance to its destination with the grid assuring continuous reliable service.

Fulton argues more specifically under its second point that the $1.39/kwm rate set by the trial court improperly included the cost of Associated's 161kv. transmission and 161/69kv substation facilities and that after trial evidence shows the rate to be excessive.

First of all, Fulton's post-trial evidence is not proper for consideration on appeal. *Curry v. Thompson,* 247 S.W.2d 792, 798 (Mo.1952). Secondly, the trial court stated in its judgment order that the cost of the 161kv system were not included in setting the rate of $1.39 kwm. The trial court based its opinion upon the testimony of Ray Stanley.

Ray Stanley was one of the expert witnesses rendering an opinion on a reasonable rate in relation to the contract between Fulton and Central beyond the initial five year term. Stanley testified that in his rate study he broke down the cost factors relating to those serving Central's 69kv system and those serving Central's 161kv system. Stanley stated that in his opinion the unit cost for Central's 69kv system only for 1987 was $1.39/kwm.

The judgment of the trial court setting a rate of $1.39/kwm was supported by the evidence. The arguments of Fulton and Central to the contrary are denied.

Judgment affirmed.

All concur.