GRIFFIN CONTRACTING COMPANY, INC., Plaintiff–Respondent,

v.

HAWKEYE–SECURITY INSURANCE COMPANY, Defendant–Appellant.

No. 18475.

Missouri Court of Appeals, Southern District, Division One.

Nov. 3, 1993.

Motion for Rehearing and Transfer to Supreme Court Denied Nov. 29, 1993.

Application to Transfer Denied Jan. 25, 1994.

Donald Rhodes, Bloomfield, James E. Spain, Spain, Merrell and Miller, Poplar Bluff, for plaintiff-respondent.

Laurence R. Tucker, Kristine S. Focht, Watson, Ess, Marshall & Enggas, Kansas City, for defendant-appellant.

MONTGOMERY, Judge.

This is an appeal from a lawsuit instituted by Griffin Contracting Company, Inc. (Plaintiff), against Hawkeye–Security Insurance Company (Hawkeye). After a jury trial on Plaintiff's First Amended Petition, the trial court entered a judgment on the jury verdict in favor of Plaintiff in the amount of (1) $107,000 for breach of contract, (2) $9,630 for interest, (3) $13,000 for vexatious refusal to pay, and (4) $36,000 for attorney fees. Hawkeye appeals from that judgment.

The central issue here is whether the case should have been decided on the parties'

Stipulation of Facts instead of allowing Plaintiff to proceed with a jury trial. The issue is easier understood after a narrative of the determinative facts.

Plaintiff purchased a commercial general liability insurance policy from Hawkeye. The policy was in force at the time Gerald Griffin[1] was sued by a neighboring farmer, George Hobbs, for polluting his land. The Hobbs petition alleged, *inter alia*, that "waste materials, pollutants, contaminants, refuse and other solid waste materials have drained, leached and blown ... from ... Gerald Griffin's ... dump onto [Hobbs'] farmland blocking and impairing [Hobbs'] drainage system and contaminating, polluting and severely damaging [Hobbs'] farmland and ... crops growing on said farmland...."

A copy of the Hobbs petition was forwarded to Hawkeye in late 1989 or early 1990. After considering the claim, Hawkeye sent a letter, dated March 21, 1990, to Plaintiff, denying coverage on the basis of the so-called "pollution exclusion" in the policy.

In July 1990, this action was filed in the Circuit Court of Stoddard County, Missouri. Plaintiff filed a Petition for Declaratory Judgment seeking a declaration that Hawkeye was obligated to defend Plaintiff in the Hobbs lawsuit[2] and to pay any judgment rendered against Plaintiff.

In August 1990, Hobbs amended his petition, adding Plaintiff as a defendant in that suit. According to Hawkeye, allegations in the amended petition remained descriptive of circumstances that caused the pollution exclusion to apply. Again, Hawkeye denied coverage.

Beginning in October 1990, Plaintiff and Hawkeye discussed the possibility of submitting the case on a stipulation of facts. Plaintiff's counsel sent the first draft of such a stipulation to Hawkeye's counsel on November 14, 1990. After certain revisions and changes were made, Hawkeye's counsel sent the stipulation to Plaintiff's counsel on February 26, 1991, for signing, filing, and sub-

mission to the Honorable Robert Barney. By the latter date, the parties had made the court aware of their intention to submit the case on a stipulation of facts together with appropriate briefs.

After briefs were filed, the trial court made a docket entry on April 5, 1991, setting the case for a meeting with the attorneys on April 25, 1991, for the purpose of selecting a date for a full hearing. The docket entry further recited, "Upon agreed date for hearing the Court will receive additional evidence/testimony, if any."

For reasons unexplained by the record or the parties, the April 25, 1991, hearing did not take place. Instead, trial of the underlying Hobbs case commenced on May 6, 1991. During the fourth day of trial, the parties reached a settlement that required Plaintiff to pay Hobbs $65,000, plus certain costs and expenses in the amount of $41,543.78.

Settlement of the Hobbs case caused Plaintiff, on August 2, 1991, to request leave to file an amended petition and add Farm Bureau Town & Country Insurance Company of Missouri as a defendant. Plaintiff's request was granted (without Hawkeye's opposition), and Plaintiff filed an amended petition for breach of contract on August 15, 1991. In that petition Plaintiff alleged Farm Bureau and Hawkeye were similarly liable to Plaintiff for failure to defend the Hobbs lawsuit and for failure to pay the settlement sum. The petition prayed for actual damages of $150,000 plus interest, $15,000 for vexatious refusal to pay, attorney fees expended in defending the Hobbs litigation and as a result of defendant's vexatious refusal to pay, and costs and expenses.

On December 12, 1991, the parties stipulated to a change of venue from Stoddard County to Butler County, Missouri. On December 27, 1991, the Circuit Court of Butler County received the file, and the case was assigned to the Honorable W. Robert Cope.

1. Griffin was president of Plaintiff, Griffin Contracting Co., Inc. He and his wife were also its sole shareholders.

2. The petition also alleged that a second lawsuit had been instituted against Plaintiff, which was similar in nature to the Hobbs lawsuit. Plaintiff requested the same relief as to both underlying lawsuits.

Plaintiff appeared in court on January 27, 1992, and requested a trial setting. The case was set for jury trial on August 5, 6, and 7, 1992. The record indicates the parties were notified by letter on February 21, 1992, of the jury trial setting. On February 26, 1992, the court reset the case for trial on August 19, 20, and 21, 1992, and the parties were again notified of the resetting.

Beginning in April 1992, the docket sheets indicate the parties engaged in considerable discovery efforts.[3] On April 17, 1992, Plaintiff propounded interrogatories to Hawkeye and also requested Hawkeye to produce certain documents. Hawkeye, without objection, answered the interrogatories and responded to Plaintiff's request on May 7, 1992. Plaintiff answered Hawkeye's Opening Interrogatories to Plaintiff on July 28, 1992, and on July 31, 1992, Plaintiff filed its Response to [Hawkeye's] Request for Production of Documents.[4] Finally, Plaintiff filed supplemental answers to Hawkeye's interrogatories on August 10, 1992 (the same day Hawkeye filed a motion to submit the case on the stipulation of facts). Hawkeye's counsel further acknowledged during oral argument before this Court that Hawkeye deposed Plaintiff (presumably President Griffin) after the amendment of Plaintiff's petition.

On August 10, 1992, Hawkeye filed a Motion for Submission of the Case on Stipulation of Facts after Plaintiff's counsel had indicated the stipulation was not binding on Plaintiff. The motion was heard that day and was subsequently denied on August 13, 1992.

The jury trial commenced on August 19, 1992. On that day, Plaintiff dismissed its claim against Farm Bureau without prejudice.

■ Paraphrased, Hawkeye's first point alleges the trial court erroneously refused to honor the parties' valid stipulation thereby allowing Plaintiff, in violation of the stipulation, to proceed by jury trial and to introduce evidence contrary to the stipulated facts. In opposition, Plaintiff contends the stipulation pertained only to the declaratory judgment action, which was abandoned when the amended petition for breach of contract was filed. Simply stated, we must determine whether the trial court correctly denied enforcement of the parties' stipulation.

■ A stipulation is an agreement between counsel with respect to business before the court and, although not a usual pleading, is a proceeding in the cause and so under the supervision of the court. *Pierson v. Allen*, 409 S.W.2d 127, 130 (Mo.1966). "They are controlling and conclusive, and courts are bound to enforce them." *Id.* However, *Pierson* further observes, quoting from *Landers v. Smith*, 379 S.W.2d 884, 888 (Mo.App.1964), " 'A stipulation should be interpreted in view of the result which the parties were attempting to accomplish....' " 409 S.W.2d at 130.

■ Furthermore, it is clear that the rules of contracts apply to stipulations, and as in the construction of contracts, so stipulations are construed in terms of the surrounding circumstances and the intent of the parties. *Ezenwa v. Director of Revenue*, 791 S.W.2d 854, 859 (Mo.App.1990).

> The cardinal rule in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be determined from the contract alone. Where a contract is not clear it is construed as it is understood and acted upon by the parties.

*City of Fulton v. Central Elec. Power*, 810 S.W.2d 349, 351 (Mo.App.1991) (citations omitted).

**3.** On our own motion this Court ordered that the record be supplemented with copies of the discovery requests and responses as shown filed by the docket sheets. *See* Rule 81.12(e)

**4.** The docket sheet does not show the date Hawkeye filed its opening interrogatories or request to produce documents. However, during oral argument Hawkeye's counsel conceded such discovery was probably commenced after the petition was amended. Certainly, the docket sheets from both Stoddard County and Butler County show no discovery requests were filed by any party prior to April 17, 1992. Assuming Plaintiff timely responded to Hawkeye's discovery request, the filings thereof were well after April 17, 1992.

The stipulation in question contains the following relevant provisions:

COME NOW Plaintiff and Defendant, by and through their respective counsel of record, and hereby stipulate and agree that *this case* may be submitted to the Court for a decision on the following uncontroverted facts, to wit:

....

9. Griffin Contracting *filed the instant action seeking a declaration* by this Court that, ... Hawkeye is obligated to defend and indemnify Griffin Contracting in the *Hobbs* and *Carroll* litigation....

....

11. *A justiciable controversy exists between the parties on the issues of whether* the claims set forth in the *Hobbs* and *Carroll* petitions fall within the coverages [of Hawkeye's policy] so as *to require Hawkeye to provide* Griffin Contracting with *a defense and indemnify Griffin Contracting for any judgment rendered* against to the extent of the policy limits in connection with the *Hobbs* and *Carroll* lawsuits.

(Emphasis ours.)

Only these provisions shed any light on whether the parties intended that the stipulation would apply if Plaintiff's petition was amended to allege a different theory with a different remedy. Over several months, the parties revised the stipulation before submission to the court. They agreed upon language referring to "this case," "the instant action seeking a declaration," and to the fact that a controversy existed between them on whether the underlying lawsuits were covered by the policy "so as to require Hawkeye to provide [Plaintiff] with a defense and indemnify [Plaintiff] for any judgment rendered" in connection with the lawsuits. We believe the trial court correctly determined the parties did not intend that the stipulation would apply to any controversy except the declaratory judgment action. The language of the stipulation is not ambiguous, and it specifically defines the controversy to which it applies.

In *Edwards v. Hrebec,* 414 S.W.2d 361, 366 (Mo.App.1967), this Court said, "A stipulation fairly entered into as to some fact in issue at a trial becomes a part of the record and is binding upon the parties and the court upon a subsequent trial of the same action, provided its terms do not limit it to a particular occasion, object or proceeding." Here, the terms of the stipulation limit its application to the controversy regarding the relief requested in the declaratory judgment action.

However, even if the stipulation were viewed as ambiguous or unlimited on this issue, the circumstances and actions by the parties militate against Hawkeye's position. Clearly, after the Hobbs case settled, the relief requested in the declaratory judgment action was meaningless to Plaintiff. Filing an amended petition was a reasonable and necessary step by Plaintiff. In addition, Hawkeye did not oppose Plaintiff's request to file an amended petition in August 1991.

Upon being notified in February 1992 of a jury trial setting, Hawkeye offered no objection. After the case was set for jury trial, Hawkeye engaged in its own discovery efforts and responded to Plaintiff's interrogatories and request to produce without any objection. Obviously, if the facts were agreed upon relative to the amended claim, no additional discovery was necessary. We doubt that the parties were engaging in a meaningless activity. Therefore, Hawkeye's actions (as well as Plaintiff's) from August 1991 until nine days before trial indicate there was no intention that the stipulation would be applicable to the amended claim.

Hawkeye contends that a stipulation is binding absent proof that it is illegal, citing *Lewis v. Vargas,* 787 S.W.2d 319, 320 (Mo. App.1990). Because Plaintiff neither alleged nor established the stipulation arose out of circumstances of fraud, mistake or illegality, Hawkeye says Plaintiff was bound thereto.

While Hawkeye argues a valid legal principle, it has no application to this case. Plaintiff has consistently taken the position that the stipulation applied only to the declaratory judgment action, not that it was illegally produced.

*Huegel v. Huegel,* 329 Mo. 571, 46 S.W.2d 157 (Mo. banc 1932), is supportive of Plaintiff's position. *Huegel* holds that " '[t]he

rules applicable to the construction of contracts generally govern the courts in their interpretation of stipulations, and thus stipulations will receive a reasonable construction with a view to effecting the intent of the parties....'" *Id.* 46 S.W.2d at 158.

Although not factually identical with this case, *Huegel* is persuasive. There, plaintiffs filed an action to set aside decedent's will, alleging the will resulted from undue influence exercised by his wife Mary. Later, the same plaintiffs and the administrator of decedent's estate filed a second action against Mary to set aside a transfer of stock to her from decedent, alleging that Mary procured the same by undue influence. Thereafter, the parties stipulated that, in the will contest suit, they would abide by the result reached in the stock transfer case.

During the trial of the stock transfer case, plaintiffs were allowed to add a second count pleading that Mary held the stock in trust for the use and benefit of decedent's estate. A judgment was entered for plaintiffs solely on the second count. Subsequently, a judgment for plaintiffs was entered in the will contest case based on the stipulation. The judgment was reversed after the Supreme Court construed the stipulation with a view toward the intent of the parties. The Court said that "the stipulation itself pointedly indicates that the parties thereto intended that the stock transfer case should be tried and determined on the issue of undue influence and had no thought that it would be disposed of on the theory that the transfer created a trust." *Id.* 46 S.W.2d at 160.

Here, the stipulation pointedly indicates the stipulated facts pertain to the controversy and relief involved in the declaratory judgment action and, like *Huegel,* the parties had no thought that the case would later be disposed of on the breach of contract theory. We hold that the trial court properly construed the stipulation. Point I has no merit.

Hawkeye's second point claims the trial court erroneously allowed Plaintiff to introduce facts which occurred after the parties entered into the stipulation. Because of our disposition of point I, we need not address this point.

Hawkeye's remaining points read as follows:

### III.

The trial court erred when it allowed Griffin Contracting to put on rebuttal witnesses because their testimony was cumulative of Griffin Contracting's case-in-chief.

### IV.

The trial court erred in submitting Griffin Contracting's vexatious refusal to pay claim to the jury because there was, as a matter of law, insufficient evidence to support such a claim.

### V.

The trial court erred in submitting the issue of attorney's fees on Griffin Contracting's vexatious refusal to pay claim to the jury because the claim was unsupported by the evidence.

### VI.

The trial court erred when it denied Hawkeye's request for remittitur because the evidence did not support the jury's award of damages to Griffin Contracting.

### VII.

The cumulative error committed by the trial court was prejudicial to Hawkeye in that the combined grounds stated above affected the trial of the case in such a way as to have substantial prejudicial influence on the verdict returned by the jury.

■ It is readily apparent that none of these five points complies with the "wherein" and "why" requirements of Rule 84.04(d). Three things are required with respect to points relied on: (1) a statement of the action or ruling about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement that specifies wherein the evidence supports the position the party asserts that the trial court should have taken. *Carrier v. City of Springfield,* 852 S.W.2d 196, 198 (Mo.App. 1993). The deficiencies of Hawkeye's points

are quite similar to the deficiencies of the points condemned in *Thummel v. King,* 570 S.W.2d 679, 684–87 (Mo. banc 1978). Therefore, no purpose would be served by lengthening this opinion with a detailed explanation of the defects in each of Hawkeye's last five points.

Compliance with Rule 84.04(d) is mandatory and essential for effective functioning of appellate courts. *Draper v. Aronowitz,* 695 S.W.2d 923, 924 (Mo.App.1985). An insufficient point relied on preserves nothing for this Court's review. *Bentlage v. Springgate,* 793 S.W.2d 228, 231 (Mo.App.1990). Because the last five points relied on are deficient, we decline to consider them. *See* Rule 84.13(a).

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.