In re the MARRIAGE OF Gay Cole
THOMPSON, Appellant,

and

Terry Randall THOMPSON,
Respondent.

Nos. 22514, 22751.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 4, 2000.

Susan L. Ward, Mary E. Niemira, Clayton, for appellant.

Theodore S. Schechter, Jeffrey S. Schechter, M. Adina Johnson, Clayton, John E. Curran, Co–Counsel, Osage Beach for respondent.

BARNEY, Chief Judge.

■ Gay Cole Thompson ("Wife") appeals from the judgment dissolving her marriage to Terry Randall Thompson ("Husband"). Wife posits three points of trial court error relating to the trial court's division of marital properties. The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the manifest weight of the evidence, or it erroneously declares or applies the law. *Wood v. Wood,* 2 S.W.3d 134, 138 (Mo.App.1999). We affirm.

Husband and Wife were married on November 5, 1988. One child was born of the marriage. As best we can glean from the record, Wife initiated the proceedings below by filing a "Petition for Legal Separation" in June of 1996 followed by a "Petition for Dissolution." Husband then filed an "Answer to [Wife's] Petition for Legal Separation and Counter Petition for Dissolution of Marriage." In due course, Wife filed a "Second Amended Petition for Dissolution." The matter proceeded to trial on October 28–31, 1997; February 24–26, 1998; and April 27–30, 1998.

On the final day of trial, the parties informed the trial court they had settled the property issues in contention. At that time the parties respectively testified to the details of their property settlement agreement. In aid of their testimony, the parties referred to two documents: Petitioner's Exhibit "88," a handwritten memo outlining the terms of the settlement; and Respondent's Exhibit "AW," a spreadsheet listing, *inter alia,* various financial accounts of the parties, their respective values and whether held in the sole name of a party or in the joint names of the parties.[1] Wife's attorney had Wife testify to each provision of Exhibit "88" and testify as to other properties that she was to receive under the agreement. As part of her testimony, and using Exhibit "AW" for reference, Wife identified certain financial accounts held by the parties and testified that under the agreement she would receive all of the accounts held in her sole name, with an approximate market value in excess of $1,750,000.00. Six of the ac-

---

1. As best we discern from the record, Exhibit "88" was received into evidence. Exhibit "AW" was not. However, Wife has appended Exhibit "AW" to her brief and, since it is clear that the parties agree as to its content, we may consider it as though it appeared in the record and shall continue to refer to the document as Exhibit "AW." *See State ex rel. Suitor v. Stremel,* 968 S.W.2d 221, 225 (Mo. App.1998); *In re Marriage of Balough,* 983 S.W.2d 618, 620 n. 3 (Mo.App.1999).

counts were held jointly by the parties. The market value of these accounts exceeded $15,000,000.00. We discern that the division of these latter accounts constitutes the underlying basis for Wife's appeal. In setting out their property settlement agreement, Wife identified each of these accounts and testified as follows:

Q. [Wife's Attorney]: What is your understanding of the percent—percentage of accounts that are listed there are you to receive?

A. [Wife]: I am to receive 30 percent of joint accounts. And there are six of them.

Q: And would you please list those accounts for the Court?

A: No. 1, No. 2, No. 5, No. 7, No. 8, and No. 9 [on Exhibit "AW"].

Q: Is it your understanding that those accounts are to be separated in kind? Do you know what that means?

A: Yes. Like trades, like stock.

Q: Okay. So, for example, if there is in any of those accounts a hundred shares of a certain stock—

A: I would receive 30 of those.

Q: —that they're to be separated 30 percent to you and 70 percent to your husband. Do you understand that?

A: Okay. Yes, sir, I do.

Wife also testified that she had refused to have appraisers or financial experts hired because she believed the appraisals by Husband's experts were sufficiently accurate. She stated that she was not pressured into making the agreement and that during the course of the negotiations she had talked to her sister on the phone concerning the proposed settlement. She also testified she knew she was entitled to go to trial on the property issues but she preferred to settle those issues, and she understood they had, indeed, been settled. Wife further testified there was nothing in the settlement that she had not agreed to and related that Husband was to receive all property not awarded her by the agreement. She stated that she was aware of all the property Husband would receive and she asked the court to approve the settlement. The final question posed to Wife is set out below:

Q [Husband's Attorney]: ... I'm sure it's been explained to you that we are going to attempt to reduce this agreement to a more formal document; but in the event we do not or in the event we do and you do not sign the document, that once this settlement is spread on the record, the Court will enter this order whether you sign the document or if there is no document.

A [Wife]: All right.

Q: Do you understand that?

A: Okay.

Husband, in turn, testified that he was to receive the property not awarded Wife. He related that he thought the settlement was fair. He stated that he understood the agreement was being spread upon the record so it could be enforced even if it were not reduced to a more formal writing or in the event he refused to sign a more formal writing.

Following the hearing, the next important event in the case is memorialized by the following docket entry for May 1, 1998:

Per memo from Judge Scott. "Case called Parties appear in person & by attorney. G.A.L. appears. Evidence heard. Court approves oral settlement of parties & announces custody & visitation decision. Matter then under submission of Judgment within 15 days. Petitioner's attorney ordered to prepare same."

The record reflects that Wife's attorney never presented a formal judgment to the court as ordered. It is apparent that Wife instructed her attorneys to take no further action in the matter and hired new counsel. Her new counsel filed a "Motion to Amend or Modify Judgment/Decree of Dissolution or for New Trial ... or to Withdraw [the trial court's] Submission of May 1, 1998," which the trial court overruled following a hearing. Wife then filed

appeal number 22514, based on the May 1, 1998, docket entry of the trial court.[2]

On August 27, 1998, the trial court entered its judgment.[3] In pertinent part, the judgment of the trial court approved and set forth the oral property settlement agreement which, *inter alia,* divided the joint accounts among the parties. Wife seasonably filed her second appeal, number 22751. Pursuant to Wife's motion, this court consolidated both appeals.[4]

## I.

■ Wife's first and third points are interrelated and will be addressed conjunctively. In Wife's first point on appeal, she claims trial court error because its judgment was "based on Exhibit 'AW' which was capable of seven different, equally plausible interpretations" and that the judgment was therefore "so vague and ambiguous, that it should not be enforced." In her third point on appeal, Wife claims the trial court erred "when it enforced the parties' oral property settlement because the agreement is based on Exhibit AW" and that Exhibit "AW" "is not capable of certain interpretation or meaning."[5] We disagree.

■ We initially observe that "[g]enerally, a judgment must be definite and certain to be enforceable." *Morgan v. Ackerman,* 964 S.W.2d 865, 871 (Mo.App.1998). In our review of Exhibit "AW" we discern that it is a document showing various items of real and personal properties and the respective values assigned to such

properties, before and after taxes, commissions, etc. The fact that Exhibit "AW" valued the accounts in question by different methods is irrelevant. Any uncertainty or ambiguity contained in Exhibit "AW" is of little weight, since the oral separation agreement did not incorporate the exhibit as part of the contract nor did the parties' oral property settlement agreement specifically set out the value of these properties. While both Exhibit "AW" and Exhibit "88" were examined by the parties for reference while spreading the oral agreement upon the record, these exhibits were not formally incorporated into the agreement itself. Indeed, in its judgment, the trial court noted that any assigned values given to the joint accounts were "approximate net values, if known." More importantly, as explained, *infra,* the trial court made a percentage division of each of the six joint accounts.

■ As previously observed, the parties had come to an oral settlement agreement as to the property issues in the case and had spread the agreement upon the record.

In the administration of justice and the prompt dispatch of business, courts must and do act upon the statements of counsel and upon the stipulations of parties to pending causes. Where the parties have voluntarily entered into a stipulation, which appears fair and reasonable for the compromise and settlement of the issues of a pending cause, and where the stipulation is spread

2. In appealing, Wife cites *Linzenni v. Hoffman,* 937 S.W.2d 723 (Mo. banc 1997), and sets out that she filed her "Notice herewith in order to preserve and perfect her appeal on the merits."

3. As best we ascertain from the record, Husband submitted a proposed judgment following Wife's failure to do so. Husband's submission was apparently adopted by the trial court.

4. *See* Rule 81.05(b) ("In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed imme-

diately after the time the judgment becomes final for the purpose of appeal"). All rule references are to Missouri Court Rules (2000), unless otherwise noted.

5. *Wife makes various other claims of error for the first time in the argument portion of her brief.* This Court does not review allegations of error raised in the argument section of the brief which are not set out in the point relied on. *See Choate v. Natvig,* 952 S.W.2d 730, 735 n. 3 (Mo.App.1997); *Unlimited Equip. Lines, Inc. v. Graphic Arts Ctr., Inc.,* 889 S.W.2d 926, 932 (Mo.App.1994).

upon the record with the consent and approval of the court, as here, the parties are bound thereby and the court may thereafter, properly proceed to dispose of the case upon the basis of the pleadings, the stipulation and the admitted facts.

*Peirick v. Peirick,* 641 S.W.2d 195, 196 (Mo.App.1982)(quoting *Hansen v. Ryan,* 186 S.W.2d 595, 600 (Mo.1945)); *see Markwardt v. Markwardt,* 617 S.W.2d 461, 462 (Mo.App.1981); *see also Fair Mercantile Co. v. Union–May–Stern Co.,.* 359 Mo. 385, 221 S.W.2d 751, 755 (1949).

In recognition that the parties had reached an agreement as to their property issues, the trial court approved the agreement and attempted to memorialize the provisions of the oral agreement in its Judgment. In its Judgment, the court also made the following pronouncements relating to the agreement:

> The Court having considered ... the settlement of the nonmarital and marital property by the parties which has been spread upon the record and approved by the Court ... enters its Findings of Fact, Conclusions and Judgment/Decree as follows:
>
> . . . .
>
> The Court approves the property settlement heretofore entered into by the parties and spread upon the record, as set forth in paragraph 15, and finds said property settlement to be fair, reasonable and conscionable.
>
> . . . .
>
> In arriving at the division of nonmarital and marital property, the Court has been guided by the parties' agreement as spread upon the record and found to be conscionable.

■ As we perceive the oral property settlement agreement, the six jointly held accounts are to be divided "in kind" with 30 percent going to Wife and 70 percent going to Husband. The phrase "in kind" is defined as "[i]n a similar way; with an equivalent of what has been offered or received." Blacks Law Dictionary (Deluxe) 790 (7th Edition 1999). Even if we consider the phrase "in kind" to be ambiguous, Wife cured the ambiguity with her own testimony. Wife testified that "in kind" as used in the agreement was to mean "[l]ike trades, like stock" and that if there were one hundred shares in an account she would receive thirty. "The normal rules of contract construction apply to marital settlement agreements." *Wood,* 2 S.W.3d at 138.

> The cardinal rule in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be determined from the contract alone. Where a contract is not clear it is construed as it is understood and acted upon by the parties.

■ *Griffin Contracting Co., Inc. v. Hawkeye-Security Ins. Co.,* 867 S.W.2d 602, 604 (Mo.App.1993) (citations omitted)(quoting *City of Fulton v. Central Elec. Power,* 810 S.W.2d 349, 351 (Mo.App. 1991)). "Even if a contract is ambiguous, it should not be held void for uncertainty if there is a possibility of giving meaning to the agreement." *Branson Land Co. v. Guilliams,* 926 S.W.2d 524, 526 (Mo.App. 1996). These precepts, in conjunction with our review of the record, convince us that Wife understood that the six joint accounts were going to be divided "in kind" with Wife receiving 30 percent and Husband receiving 70 percent. The judgment was neither vague nor ambiguous. Wife's first and third points are denied.

### II.

■ In her second point on appeal, Wife claims the trial court erred "by entering its judgment in the absence of evidence of the current values of the assets at the time the decree was to become effective and thus did not, as required by § 452.330 RSMo. consider the parties' economic circumstances at the time the division of

property was to become effective."[6] This point lacks merit. We have already noted that the trial court divided the joint accounts in kind, pursuant to the property settlement agreement of the parties. Furthermore, Wife's second point incorrectly assumes the trial court was proceeding under § 452.330, RSMo Cum.Supp.1998, and was, therefore, bound by its precepts. However,

> [Wife] mistakes the applicable standard for the trial court's review of the parties' property settlement. The "relevant factors" in § 452.330.–1 apply *when in the absence of any agreement* the trial court must "divide the marital property in such proportions as the court deems just...." Here, however, the property division was made by the parties' agreement, and the trial court was bound by that agreement unless the agreement is unconscionable[.]

*Peirick,* 641 S.W.2d at 196–97 (Mo.App.1982)(emphasis added);[7] *see also Dow v. Dow,* 732 S.W.2d 906, 908 (Mo. banc 1987)(" § 452.325 allows, but does not require, the trial judge to investigate and examine the economic circumstances of the parties ... in determining conscionability of the settlement agreement"). "[U]nconscionability [is] an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Peirick,* 641 S.W.2d at 197(citation omitted);[8] *see also In re Marriage of Turner,* 803 S.W.2d 655, 658 (Mo. App.1991)("the test of unconscionability is not measured by the factors delineated in § 452.330"). Wife's second point is denied.

The judgment of the trial court is affirmed.

CROW and GARRISON, JJ., concur.

---

**6.** Section 452.330, RSMo Cum.Supp.1998, reads, in pertinent part:

1. In a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

**7.** Section 452.325.2, RSMo 1994, reads as follows:

In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except terms providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

**8.** None of Wife's points on appeal question the validity of the trial court's conscionability determination.