FILED

November 17, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

GAIL FARLEY DYER,                            )
Individually and as Co-Administrator of the  )
Estate of Benton James Farley, Deceased,     )
                                             )
            Plaintiff/Appellee,              )
                                             )     DeKalb Chancery
                                             )     No. 91-139
VS.                                          )
                                             )     Appeal No.
                                             )     01-A-01-9506-CH-00229
TERRY R. FARLEY,                             )
                                             )
            Defendant/Appellant.             )


IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF DEKALB COUNTY

AT SMITHVILLE, TENNESSEE


HONORABLE VERNON NEAL, CHANCELLOR


DALE BOHANNON
115 South Dixie Avenue
Cookeville, Tennessee 38501
ATTORNEY FOR PLAINTIFF/APPELLEE


SUE N. PUCKETT-JERNIGAN
312 West Broad Street
Smithville, Tennessee 37166
ATTORNEY FOR DEFENDANT/APPELLANT


AFFIRMED AND REMANDED


                        HENRY F. TODD
                        PRESIDING JUDGE, MIDDLE SECTION


CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

| | |
|---|---|
| GAIL FARLEY DYER, | ) |
| Individually and as Co-Administrator of the | ) |
| Estate of Benton James Farley, Deceased, | ) |
| | ) |
| Plaintiff/Appellee, | ) |
| | )  DeKalb Chancery |
| | )  No. 91-139 |
| VS. | ) |
| | )  Appeal No. |
| | )  01-A-01-9506-CH-00229 |
| TERRY R. FARLEY, | ) |
| | ) |
| Defendant/Appellant. | ) |

O P I N I O N

The defendant Terry R. Farley, has appealed from the final judgment of the Trial Court in a controversy regarding his dealings with his deceased father, Benton James Farley.

On September 27, 1991, Gail Farley Dyer, as co-administrator and individually, filed this suit against her brother, Terry R. Farley as an individual, stating, however, that he was a co-administrator with her of their deceased father's estate.

The complaint alleged that, on March 18, 1988, deceased paid defendant $15,000 as payment for the purchase of a described tract containing a partially constructed house; that deceased completed the house and made further payments to defendant, but never received a deed to the land.

The complaint further alleged that defendant mishandled or misappropriated the funds of deceased in a joint checking account and proceeds of insurance on the life of deceased. The complaint also alleged that defendant had not accounted for rent collected by him on the land he sold to deceased and had converted certain personal property of the deceased.

The complaint prayed:

1. For a constructive or resulting trust upon the land alleged to have been purchased by deceased.

2. For judgment against defendant for $30,902.83.

3. For an accounting for rent.

4. For return of converted personalty

5. For the removal of defendant as co-administrator and "that he be held personally

liable to the estate and plaintiff for his fraud and bad faith in converting property of the estate

to his own benefit."

The answer of defendant denied any defalcation, or conversion of deceased's property,

prayed for removal of plaintiff as administrator and asserted:

> . . . 6. It is denied that the decedent ever purchased any land
> from the defendant. The copy of the defendant's deed filed as
> Exhibit 1 speaks for itself and is admitted.
>     7. At one time the defendant did have a deed prepared to
> Benton James Farley, which deed was delivered in trust to the
> Benton James Farley with the understanding that if the
> defendant predeceased the decedent the deed was to be
> recorded. However, a few months after this conversation
> between the decedent and the defendant, the decedent gave the
> deed back to the defendant, and the defendant destroyed the
> deed in the presence of and with the consent of the decedent.
>     8. Defendant admits that the decedent, his father, did pay
> some money toward the completion of the subject house in
> exchange for the defendant's agreement with his father that he
> could move into the home and remain there the remainder of
> his life, rent free. . . .

After a non-jury trial, the Trial Judge found:

> . . . The parties to this suit are the children, heirs and next of
> kin of Benton James Farley who died intestate in DeKalb
> County, Tennessee, on November 22, 1990.
>
>     . . . .
>
>     On March 17, 1988, Benton Farley gave Terry Farley a check
> in the amount of $15,000.00. Gail Dyer contends this was
> payment on the purchase of a cabin by Benton Farley from
> Terry Farley, while Terry contends that the $15,000.00 check
> represented payment or monies which his father gave him to
> live in the cabin until his death.
>
>     Benton Farley moved into the cabin prior to March 31, 1988,
> and remained there until his death. At the time the decedent
> gave Terry the $15,000.00 check the cabin was dried in. . . .
> Terry admitted that his father paid him an additional $9,000.00
> subsequent to the $15,000.00 payment, which was represented

-3-

by a $3,000.00 payment and a $6,000.00 payment. Benton Farley additionally spent in excess of $5,000.00 for materials and labor on the cabin aside from the labor he personally performed thereon.

. . . .

Terry Farley went to the office of attorney Dale Bohannon in Cookeville and had a deed prepared to the cabin purportedly making some type of conveyance to Benton Farley. . . .

. . . In his answer, Terry Farley admitted that he did have a deed prepared to his father and he alleged that the deed was delivered in trust to the decedent with the understanding that if Terry predeceased the decedent the deed was to be recorded. . . .

. . . Terry Farley testified that in making the deed he just picked out a lot number and that it was not a valid lot number. Under that set of facts, the deed would not have made any valid type of conveyance to the lot and cabin in question. The false description appears to be an intentional act on Terry's part . . . . The deed was prepared at the direction of Terry Farley whom the Court finds had superior knowledge over his aging and infirmed father who reposed trust and confidence in him as to the contents of and execution of the deed. Gail was never shown the deed and it was destroyed by Terry.

. . . Benton Farley had shown an intention in the past to treat his son and daughter equally with regard to his property as evidenced by the marking of "loans" on the $4,805.00 checks, the gifts of $400.00 cash each and the $35,000.00 equal division of the C.D.'s.

. . . Benton Farley had been diagnosed as having prostate cancer when he moved into the cabin and he lived only some twenty-seven months thereafter. The $30,000.00 or more that he invested in the cabin would be excessive and an unconscionable sum to pay for twenty-eight months of rent.

The Court, therefore finds and holds that Benton Farley intended to take and thought he was taking a fee simple absolute title to the cabin and his intention was thwarted by Terry Farley who actually never made a valid conveyance of any interest. Terry, thus, held the property in trust for Benton Farley and it therefore results that a constructive trust should be and is imposed on the cabin and lot in question and the same passes to the heirs of Benton James Farley as a part of his estate.

. . . .

Terry Farley testified that he had rented the cabin for $350.00 per month part of the time since February, 1991. However, there is not sufficient proof in the record for the Court to determine the amount of rental due the estate. It will, therefore,

be necessary for the Clerk to take a reference or accounting to determine the total of such rental due the estate.

. . . .

The account at Citizen's Bank was in the name of Benton Farley or Terry R. Farley and was signed by both. . . . Terry Farley admitted that the money in the account was Benton Farley's money and he further admitted that he was holding the money for the decedent's benefit. The various checks drawn on the account payable to Terry Farley and totalling $4,805.00 were all marked as "loan". . . .

. . . T.C.A. § 20-5-102; Leffew v. Mayes, 685 S.W.2d 288 (Tenn.App. 1984).

. . . .

The Court, therefore, accordingly finds and holds that Terry Farley is indebted to the Estate of Benton Farley for loans in the amount of $4,805.00.

. . . .

From April through October, 1990, Gail Dyer deposited $1,594.46 of interest on her $35,000.00 C.D. into Terry Farley's account for Benton Farley's use. Terry admitted that he had no records to show that these funds were transferred or used for Benton Farley's benefit. The Court finds that the purpose for which these funds were transferred in trust to Terry failed, and that Gail Dyer is entitled to individually recover the sum of $1,594.46 from Terry Farley, this being the sum she had paid Terry for her father's use and benefit.

. . . .

. . . The Court finds that the co-administrator, Terry R. Farley, has failed to properly account for all the assets of the estate, that he has failed to cooperate with his co-administrator in that he refused to allow her to examine the decedent's checks and records short of a court order and that he is personally liable to the estate. Accordingly, the Court finds that he should be removed as co-administrator of the estate.

On February 11, 1993, the Trial Court ordered:

. . . 1. A constructive trust is imposed on the cabin and lot in which Benton Farley resided at the time of his death. A subsequent hearing will be held to determine the description of the lot upon which the cabin sits. The cabin and lot in question passes to the residuary beneficiaries under the Will of Benton James Farley as a part of his estate.

2. The Clerk will take a reference or accounting to determine the total of the rental income of the cabin and lot due

the estate beginning at the date of death of Benton James Farley.

    3.  The Administrator of the Estate is awarded a judgment against Terry R. Farley for $4,805.00 for unpaid loans.

. . . .

    5.  Gail Dyer, individually, is awarded a judgment against Terry Farley for $1,594.46 for the interest income on her $35,000.00 C.D. paid to Terry Farley for her father's use and benefit.

. . . .

    7.  The Co-Administrator, Terry R. Farley, has failed to properly account for all the assets of the estate, failed to cooperate with his Co-Administrator in his refusal to allow her to examine the decedent's checks and records short of a Court Order, and is personally liable to the estate.  Therefore, he is removed as Co-Administrator of the estate.

    8.  All other matters including the assessment of costs are reserved pending further order of the Court.  (vn)

The Master responded to the reference that defendant had collected $5,600 rent on the subject property since the death of deceased.

On March 18, 1993, the Trial Court entered the following order:

    John Nixon is appointed as Special Master to hear proof and report to the Court his findings as to the following questions:

    1.  What is the description of the lot on which Benton Farley resided at the time of his death?

    2.  What is the total amount of the rental income of the cabin and lot due the Estate of Benton James Farley, beginning at the date of death of Benton James Farley?

On August 31, 1993, the Special Master reported the true description of the property and rent collected by defendant.

On May 31, 1994, the Trial Court ordered a further hearing to determine the value of the subject property.

On August 22, 1994, the Trial Court entered the following "Final Decree:"

> The hearing to determine the value of the cabin and lot at issue in this case was set for June 28, 1994. Based upon the certified appraisals submitted by the parties by stipulation, the Court finds that the cabin and lot in which Benton Farley resided at the time of his death has a value of $56,500.00. Benton Farley lived in the house for 32 months. The Court holds that defendant Terry Farley should be allowed a credit of $9,600.00 for the fair rental of the house entitling the estate of Benton James Farley to a net judgment of $46,900.00.
>
> Therefore, IT IS ORDERED as follows:
>
> 1. This Court's prior Memorandum and prior Interlocutory Decree (judgment dated February 9, 1993) is modified to give Gail Farley Dyer, as Administrator of the estate of Benton James Farley, a judgment against Defendant Terry R. Farley for $46,900.00. This judgment will be a second lien on all of the Defendant's tract of land upon which the cabin is located. A more specific description of this property is attached as Exhibit 1 to this judgment.
>
> 2. The Defendant is not liable in any amount to the estate of Benton James Farley for rental income of the cabin and lot based upon the accounting taken by the Special Master.
>
> 3. The pleadings are hereby amended to conform to the evidence at trial and in the subsequent hearings in this case.
>
> 4. Costs of this case are assessed to the Defendant Terry R. Farley.

From said "Final Decree," defendant has appealed and presented the following issues:

> 1. Whether the trial court erred in overruling defendant's Motion to Require Counsel to Withdraw due to a conflict of interest and allowing plaintiff's counsel to continue representation.
> 2. Whether the trial court erred in overruling defendant's objection to the plaintiff testifying concerning the decedent's bank records.
> 3. Whether the court erred in finding that the decedent, Benton Farley, intended to take and thought he was taking a fee simple absolute title to the cabin in question and imposing a constructive trust on the cabin in which Benton Farley resided.
> 4. Whether the court erred in considering any reference to the deed prepared at the direction of the defendant after having stricken from the record all of the defendant's testimony relative to the transaction with the decedent involving the deed.
> 5. Whether the court erred in not finding that Benton Farley only intended to and did purchase a life estate in the cabin in accordance with the preponderance of the evidence.
> 6. Whether the court erred in finding that Benton Farley intended to treat his son and daughter alike.

7.  Whether the court erred in finding that the decedent only lived 27 months after moving into the cabin and that the $30,000 was an excessive and an unconscionable sum for 28 months of rent.

8.  Whether the court erred in holding that the defendant is indebted to the estate in the sum of $4,805.00 as unpaid loans for checks written on the joint account.

9.  Whether the court erred in holding that the defendant is indebted to the plaintiff individually in the sum of $1,594.46.

10.  Whether the court erred in finding and holding that the estate of James Benton Farley is entitled to a net judgment of $46,900.00, as this amount far exceeds any proof in the record of the monies actually paid by Benton James Farley to the defendant, for whatever reason.

11.  Whether the judgment is contrary to law.

12.  Whether the judgment is contrary to the evidence.

13.  Whether the judgment is contrary to the weight and preponderance of the evidence.

The plaintiff presents the following issue:

Whether the Trial Court erred in deducting $9,600.00 rental from the $56,500.00 judgment for the value of decedent's cabin and lot.

*-First Issue:  Removal of Counsel-*

The only grounds asserted by defendant for removal of plaintiff's lawyer were that said lawyer had performed legal services for deceased and had prepared a deed at the request of defendant conveying the subject land to deceased.  The attorney denied any recollection of preparing the deed.

Three principles underlie the ethical prohibition of "conflict of interest."

Canon 5 of Supreme Court Rule 8 states:

A lawyer should preserve the confidences and secrets of a client.

If, during the representation of a client, the lawyer receives confidential or secret information, that lawyer is prohibited from accepting employment in which such information or secret might be disclosed or used to the detriment of the client.

-8-

Nothing in this record indicates that, in preparing the deed at defendant's request, the lawyer received any information or secret which might be disclosed to or used for the benefit of plaintiff to the detriment of defendant in the present case. Defendant admitted the preparation and execution of the deed. There is no evidence, inference or suggestion that any other fact was confided to the lawyer on that occasion.

Canon 6 of Rule 8 of the Supreme Court states:

> A lawyer should exercise independent judgment on behalf of a client.

This rule imposes an obligation to a prospective client to decline to represent such prospect if the lawyer represents or holds other interests which would impair the exercise of the lawyer's unbiased professional judgment in advising and representing the prospective client.

There is no evidence of any obligation or interest of the lawyer which would preclude him from representing plaintiff. Certainly, his previous services to deceased in other matters would not *ipso facto* preclude him from exercising his independent professional judgment in the representation of one of the personal representatives of deceased. No special circumstances are shown to impair his professional judgment.

Canon 7 of the Rules of the Supreme Court states:

> A lawyer should represent a client zealously within the bounds of the law.

This rule imposes an obligation upon plaintiff's lawyer to represent her zealously. Defendant has no standing to complain of a violation of that obligation; and the record contains no suggestion of a danger of such violation.

The rule also imposes an obligation upon plaintiff's lawyer to confine his zeal for plaintiff's cause to lawful and ethical conduct and procedure. Although defendant might have standing to complain of a violation of this rule, there is no evidence of any such violation or danger of such violation.

In short, defendant's effort to exclude plaintiff's lawyer was groundless and was properly rejected by the Trial Judge.

*-Second Issue: Testimony of Plaintiff About Bank Records-*

Defendant cites the following parts of the record:

> Q. After your dad moved to the cabin on the lake, what was his income?
>
> A. His income was around --
>
> Ms. Puckett-Jeringan: Now, Your Honor, I'm going to object to anything that she tells about transactions with the decedent unless she knows of her own personal knowledge.
>
> COURT: Well, if she does know of her own personal knowledge --
>
> Mr. Bohannon: Do you know of your own personal knowledge what your father's income was after the time he moved to the cabin?
>
> A. Yes, I do.
>
> Q. And what was his income?
>
> A. His income was around $1,200 a month.
>
> Q. And what did that consist of?
>
> A. Okay. He had a Social security automatic deposit into his checking account, and it averaged around $600 a month. He also had interest from a C.D., and then there was --
>
> Q. How much was the interest, approximately?
>
> A. The interest averaged around $500 a month. And then there was a monthly union pension check which was always $185 a month.
>
> Q. And at that time after he moved to the cabin, did he owe any debts?

A.    No.  He had no debts.

Q.    And are you familiar with his monthly expenses?

A.    Yes, I am after going back through his checkbook and --

Ms. Puckett-Jernigan:  Your Honor, I certainly object to that. She can't testify about going back through his checkbook. That's transactions with the decedent.

Mr. Bohannon:  These are bank statements.  She's testifying what the bank statements reveal.  Also, she knows about . . . she visited with him.  She knows about his lifestyle, the type of things he bought, the expenses he had; and I would think she could testify to that.  If they want to put on their proof, that's fine.

COURT:    Well, she can testify as to what the records showed if she has those records.

Mr. Bohannon:  Ms. Dyer, after your review of the records, what do they reveal about the types of monthly expenses your father had?

A.    He had a monthly telephone bill that he paid.  He had union dues that he paid every month.  His other expenses were just ordinary expenses.  He had insurance payments that he made on the house and on his car.  There were repair bills and just your normal expenses.  There was nothing out of the ordinary.

. . . .

Q.    Have you prepared a statement showing Benton Farley's cash income and the cash that he had available to him from January 1, '88, through the date of his death?

A.    Yes.

Q.    Is that that statement?

A.    Yes, it is.

Q.    Your Honor, I'd ask that that be the next exhibit.

COURT:    All right.  Exhibit 2.

    [Statement showing cash income and cash
    available to Benton Farley from 1-1-88 through
    11-22-90 marked as Exhibit 2.]

Ms. Puckett-Jernigan:        Your Honor, I want to interpose an objection to that.  I just . . . I still think she's testifying to transactions with the decedent.

COURT:    Let me see it.

Mr. Bohannon: Your Honor, every single thing on there is documented by the bank records; and I've got them. I'm ready to put those into evidence--the final listing, the union benefit check --

COURT: Well, that's not the objection she made. The objection she's made is it's a violation of the dead man's statute.

Ms. Puckett-Jernigan: Right.

COURT: And the Court is of the opinion that it isn't.

. . . .

Q. Now let me ask you if you have also prepared a statement showing living expenses and known gifts for this period of time?

A. Yes, I have.

Ms. Puckett-Jernigan: Well, Your Honor, I certainly am going to object to that. She cannot testify to his living expenses unless she was there with him and knew.

Mr. Bohannon: Your Honor, we have the living expenses he has by check.

COURT: Well, what's the relevance of that, anyway? Are we having an accounting of everything that . . . every dime that he received and every dime that was --

. . . .

Q. Your Honor, before I get into the cabin, itself, I would like to put into evidence a copy of certain cancelled checks written on Mr. Benton Farley's bank account concerning living expenses and such. I believe these need to be put into evidence.

Ms. Puckett-Jernigan: I object--the relevance and then the transactions, too--the dead man's statute, both reasons.

Mr. Bohannon: May it please the Court, certainly Ms. Dyer wouldn't be testifying as to any transactions. These are copies of the bank statements that describe the various living expenses that Mr. Farley had over this period of time.

COURT: Well, if they have anything to do with what's in controversy, then fine; but, otherwise, in the Court's opinion, they don't have any materiality.

. . . .

Q. Ms. Dyer, let me show you some other checks that are all stapled together and ask you if you can identify those and how you were able to obtain those and how you put them together?

A.    Okay.  These checks are copies that I received from Citizen's Bank from my father's checking account.

Q.    And what are they for?

A.    Okay.  They are for building material, supplies, or labor on the cabin.

Q.    What's the total of those on the front?

A.    $5,670.17.

Ms. Puckett-Jernigan:    I object to her testifying that that's building materials on the cabin.  She can say that they're checks, but that's all.

Mr. Bohannon:  Let's go over each one of them then, Ms. Dyer.

Ms. Puckett-Jernigan:    I still object.  It doesn't matter how many times you go over it because she doesn't know if they went into the building materials.  All she can say is what the check shows.

COURT:    The checks would speak for themselves unless she has some personal knowledge.

. . . .

Mr. Bohannon:  Ms. Dyer, let me offer you that document; and do you recognize that to be a copy of an itemization of those checks that are Exhibit 19?

A.    Yes, sir.

Q.    Okay.  On one sheet.  Now if you would, for the Court, go down through that itemization; and would you testify as to those bills that you put in as going in on the cabin and why you did that?

Ms. Puckett-Jernigan:    Your Honor, again, she can't do that.  The checks speak for themselves.  There's a check to Wicke's Lumber and one to whomever.

COURT:    Well, unless she knows, she can't testify that they went into --

In addition, defendant cites pages 124-129 of the transcript which contains a lengthy sparring match about admissibility of testimony about records.

-13-

Defendant's entire argument in support of this issue is:

> There is no question but that the checks written on Mr. Benton Farley's account and signed by him are "transactions" as above described and were incompetent evidence.
>
> Even if the court should find that the checks were not "transactions" with the decedent, the plaintiff certainly was incompetent to testify as to what the checks represented, as she had no personal knowledge of any of the checks except two. (Tr., Vol. I, 40, lines 19-25; 41, lines 1-23)
>
> For these reasons the court erred in allowing the plaintiff to testify concerning any of the checks except possibly the two of which she had personal knowledge.

It is the burden of appellant to demonstrate how he was prejudiced by an alleged error committed by the Trial Court. Rules of this Court - Rule 6(a)(3). Appellant has not so demonstrated.

T.C.A. Section 24-1-203, the "Dead Man's Statute" was designed to prevent prejudice to an estate by preventing testimony of a party as to conversations or transactions which the party had with the deceased, except where the witness was called by the opposite party. In the cited portions of the record, the plaintiff was not testifying as to conversations or transactions between herself and deceased. T.R.A.P. Rule 36(b).

Appellant's brief, quoted above, appears to allege that the testimony about bank records was inadmissible as hearsay. No part of the record is cited where timely objection was made on this ground, and no such objection has been found. Failure to object in the Trial Court is generally held to be a waiver of objection on appeal. *Miller v. State,* 80 Tenn. (12Lea) 223 (1883); *Wright v. United Services Auto Assn.,* Tenn. App. 1990, 789 S.W.2d 91.

*-Issue Four is:-*

> The court erred in considering any reference to the deed prepared at the direction of the defendant after having stricken from the record all of the defendant's testimony relative to the transaction with the decedent involving the deed.

Defendant cites the following ruling of the Trial Court:

> COURT: So let the decedent. . . I mean, the defendant's testimony relative to the transaction with the decedent involving the deed be stricken from the record. I wanted to tell you that now so if that had anything to do with your direct examination.

However, the objection which triggered the ruling is not cited. It must be presumed that the court correctly stuck such testimony as violative of the "Dead Man's Statute." Defendant makes no complaint as to this ruling, but does complain of the admission of testimony of numerous other witnesses on the same subject. Said witnesses were not parties to this suit and, therefore, not subject to the "Dead Man's Statute." Defendant does not cite any objection to the testimony of the other witnesses or the ruling of the Trial Court thereon.

The answer of defendant admitted the execution of the deed exhibited to the complaint. Therefore, any other evidence of its execution is unnecessary.

There is no basis upon which to sustain the complaint of the fourth issue.

*-Issues Three and Five are:-*

> Issue 3  The court erred in finding that the decedent, Benton Farley, intended to take and thought he was taking a fee simple absolute title to the cabin in question and imposing a constructive trust on the cabin in which Benton Farley resided.

> Issue 5  The court erred in not finding that Benton Farley only intended to and did purchase a life estate in the cabin in the accordance with the preponderance of the evidence.

The answer of defendant admitted that he executed a deed to deceased, but it is uncontradicted that the deed did not describe the property in question.

The answer admits that his father completed the house on the land in question, but asserts that this work and expense were in consideration of free rent to the father.

The complaint alleged:

> 6. On March 18, 1988, Benton James Farley wrote a check on his Citizens Bank checking account for $15,000.00 to Terry R. Farley. This payment was the consideration for the purchase by Benton James Farley of land in DeKalb County, Tennessee and a partially completed house. A copy of Terry Farley's deed to the property upon which the house and lot is situated is attached as Exhibit 1. Benton James Farley paid for the remaining construction on the house and worked on it himself.

The defendant's answer responds:

> 6. It is denied that the decedent ever purchased any land from the defendant. The copy of the defendant's deed filed as Exhibit 1 speaks for itself and is admitted.

It is noteworthy that defendant's answer does not deny receipt of $15,000 from his father on March 18, 1988. Neither does it deny that the father paid for and completed construction of the house.

Averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading. T.R.C.P. Rule 8.04. (Exceptions to this rule are inapplicable to the present case.) *Edwards v. Edwards,* Tenn. App. 1973, 501 S.W.2d 283 states that a partial failure to deny should be called to the attention of the court by proper motion, but the statement is *dicta* and does not preclude consideration of the failure to deny in reaching a non-jury factual conclusion.

In spite of the defendant's testimony that he made a conditional delivery of the deed, and that it was returned to him, there is evidence to sustain the finding of the Trial Judge that the parties intended a transfer of the property to the father; or, at least, that the father's investment in the property would not be lost.

It is evident that the Trial Judge did not accept the defendant's version of the intent and results of his transactions with his father.

The evidence does not preponderate against the finding of the Trial Judge that the dealings between defendant and his father were intended to result in the father's ownership of the subject property.

*-Appellant's Sixth Issue is:-*

The court erred in finding that Benton Farley intended to treat his son and daughter alike.

The fifteen pages of written argument following this issue does not relate to this issue, but to issues 5 and 6 which have already been discussed. The sixth issue is therefore considered waived. Moreover, the intent to treat equally was circumstantial and not directly determinative of the issues in this case.

*-Appellant's Seventh Issue is:-*

The court erred in finding that the decedent only lived 27 months after moving into the cabin and in finding that the $30,000 was an excessive and an unconscionable sum for 28 months of rent.

The evidence shows that deceased moved into the unfinished house in March, 1988, and resided there until his death on November 22, 1990. This was about two years and eight months. For this period, rental of $30,000 or $937 per month does not appear to be reasonable, considering the condition of the house and the expense and labor expended on it.

No error is found in this finding of the Trial Judge.

*-Appellant's Eighth Issue is:-*

The court erred in holding that the defendant is indebted to the estate in the sum of $4,805.00 as unpaid loans for checks written on the joint account.

The loans were evidenced by checks marked "loan" and drawn by defendant upon the funds of deceased in a joint survivor's account.

Appellant cites *Estate of Haynes v. Braden,* Tenn. App. 1992, 835 S.W.2d 19, wherein there was no evidence of the ownership of a joint survivorship bank account except the contract between the bank and depositors. In the present case; defendant testified as follows:

> Q.     The joint account was opened five days after your mother died?
>
> A.     Yes.
>
> Q.     And you agree that the joint account was your dad's money.
>
> A.     Yes.
>
> Q.     Everything that went in there was your dad's money.
>
> A.     Yes.
>
> Q.     You were holding that money for his benefit insofar as your relation was concerned.
>
> A.     Yes.

This testimony of defendant effectively prevents the application of the holding in *Haynes* to the present case. Defendant admits the money belonged to his father and that he (defendant) was holding it for his father's benefit. This constitutes defendant a trustee, accountable for the money.

*-Appellant's Ninth Issue is:-*

> The court erred in holding that the defendant is indebted to the plaintiff individually in the sum of $1,594.46.

Plaintiff testified that her father divided $70,000 between her and the defendant; that she and defendant agreed to use the interest derived from the fund for the benefit of their father; that she deposited a total of $1,594.46 of such interest in defendant's personal bank account to be used for their father. Plaintiff offered no evidence that it was not used. It would be surprising if she should have such evidence, which only defendant could produce.

This situation represented a trust, and called for some response or accounting which was not forthcoming.

No error is found in the judgment in favor of plaintiff as an individual for a refund of funds entrusted to defendant for which he has offered no accounting.

*-Appellant's Tenth Issue is:-*

> The court erred in finding and holding that the estate of James Benton Farley is entitled to a net judgment of $46,900.00, as this amount far exceeds any proof in the record of the monies actually paid by Benton James Farley to the defendant, for whatever reason.

The "Final Decree," quoted above, is not based upon evidence of expenditures by deceased, but upon "certified appraisals submitted by stipulation of the parties."

Appellant's final three issues are merely summary in character and do not merit further discussion.

The appellee complains of the deduction of $9,600 rent from the value of the award in lieu of the land. Appellee does not question the amount of the deduction ($300.00 per month for 32 months), but simply states without citation of authority that the deduction was "contrary to law." This proceeding was equitable in character, and the Trial Court reached an equitable result which should not be disturbed.

It should be noted that the $46,900 judgment is in favor of the estate, one-half of which belongs to the defendant who will receive his half of the $46,900 upon the settlement of the estate.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for any necessary further proceedings.

-19-

Affirmed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE